*70
 
 TOBRINER, J.
 

 An escrow agent who has notice of the assignment of proceeds from the sale of real property may not make deductions from such proceeds in disregard of the terms of the assignment. A disbursing or “control agent” who, for the purpose of protecting the interests of the financier of a construction project and of insuring the payment of laborers and materialmen, takes an assignment of funds to be expended for such construction, possesses a sufficient interest in the assigned funds to institute in his own name an action to enforce such assignment. Finally, the assignee does not engage in the business of collecting claims owed to another within the meaning of sections 6852 and 6870 of the Business and Professions Code and therefore is not required to be licensed as a collection agency. We shall develop these points in more detail
 
 infra.
 

 We deal here with two agreements which appellant, Builders’ Control Service of Northern California, Inc., entered into with the owners and builders of two building projects to insure the financier of the projects, the Wells Fargo Bank, that the funds advanced by it to the entrepreneurs would actually be used for the construction work contemplated upon the property. To assure the lender that the money advanced would be used for the development of the property, appellant undertook, pursuant to the applicable agreement (denominated “Control Agreement”), to act as a disbursing agent for the lender and to pay out the funds only for the designated purposes.
 

 The first control agreement provided for a loan by Wells Fargo Bank of $516,820 to the owner and builder of a proposed project (Integrated Housing, Inc., hereinafter referred to as “Integrated”) for the construction of 47 residential dwellings. The agreement stipulates that Integrated has assigned the borrowed funds to appellant who, in return for a prescribed fee, undertakes the obligation of using the funds to pay all expenses connected with the project. On the same date as the execution of this agreement, the parties entered into an “Assignment of Proceeds of Sales” as a source of additional funds for the payment of the costs of the project as set forth in the control agreement. Integrated assigned to appellant all proceeds of the sale of properties situated on the described realty. Appellant is to disburse the funds pursuant to the terms of the agreement. The ‘‘ intent ’ ’ of the parties is “to provide a source of additional funds for the payment of
 
 *71
 
 the costs of the said project . . . and to insure the completion and payment of all coste for necessary street improvements ;..
 

 The second control agreement related to a loan by Wells Fargo Bank of $371,846 to Gamma Development Co. (hereinafter referred to as “Gamma”), the owner of a proposed building project involving the construction of 35 residential dwellings by Trio Builders, Inc. (hereinafter referred to as “Trio”). The agreement substantially paralleled the first control agreement. Gamma and Trio also assigned to appellant the “entire proceeds” of the sale of the real property and “all rentals or other income arising . . . from the said real property. ...” The purpose of the agreement is to pay the costs of the project and “insure the completion and payment” of all costs of required street work and other utilities.
 

 Appellant’s complaint alleges that some of the homes were completed and sold to individual buyers and the “sales were escrowed” with respondent title company, which “had notice of said Assignment” of the proceeds of the sales. The complaint further alleges that respondent title company, “having such notice . . . agreed and undertook to act as said escrow holder and assumed the duty of escrow holder pursuant to and in accordance with said terms and provisions” of the assignments. “ [S]aid Assignment was duly recorded at the request of . . . Title Company; ...” As sales were completed, respondent delivered deeds to the purchasers and, appellant alleges, “in violation of the terms and provisions of said Assignment and its duty as escrow holder, wrongfully, illegally, and negligently permitted and made deductions from said sales proceeds other than and in addition to the deductions authorized in said Assignment; that said other and additional deductions were so permitted and made without the knowledge, approval or consent” of appellant, and respondent has “failed, neglected, and refused to pay the same or any part thereof” to appellant.
 

 Although respondent is named as escrow agent in the assignments, it is neither a party to, nor is mentioned in, the control agreements. No escrow agreements between respondent and the owners of the property are annexed to the complaint, but appellant alleges that respondent had notice of the assignments and “agreed ... to act as said escrow holder and assumed the duty of escrow holder pursuant to and in accordance with said terms and provisions; ...”
 

 
 *72
 
 Appellant alleges four causes of action. Appellant’s first and third causes of action seek to recover from respondent sums of money which respondent wrongfully withheld from appellant and to which appellant is entitled under the terms of the assignments. The two counts are identical except that the first refers to the control agreement with Integrated and the third to the control agreement with Gamma and Trio. Since the second and fourth are common counts for recovery of the same proceeds claimed under the first and third causes, we need not discuss them separately.
 

 To the complaint respondent interposed general and special demurrers, which the trial court overruled. Respondent then answered, admitting that it had received a copy of the assignments “with the request that it be recorded” and that respondent had complied with such request and “caused said purported Assignment to be recorded.” Respondent denied, however, that it became obligated to act for or on behalf of appellant as escrow holder or in any other manner. The allegations of the answer, including the further denials, do not bear upon the propriety of the court’s judgment on the pleadings, which composes the issue before us.
 

 When respondent moved for judgment on the pleadings upon the ground that the complaint failed to state facts sufficient to constitute a cause of action, the trial court granted the motion and entered judgment for respondent. The court denied appellant’s motion for a new trial and appellant appeals from the judgment.
 

 We shall analyze respondent’s first contention that, in order to state a cause of action appellant “must allege damages” and that it cannot do so here. We shall likewise probe respondent’s further claim that appellant cannot state a cause of action in the absence of “facts disclosing a legal duty owed” to it by respondent, and, again, that appellant cannot allege such facts here. We shall then test respondent’s second major point that “appellant has no standing to sue in this action.” We finally consider respondent’s motions to dismiss the appeal and to augment the record, which we reserved for disposition at this time. As we shall point out in more detail
 
 infra,
 
 the motion rests upon the ground that although “appellant’s activities subject it to the Collection Agency Act,” “appellant has not applied for a license thereunder” and “the Act precludes appellant from maintaining this action.” We
 
 *73
 
 shall explain why we are unable to find merit in any of respondent’s positions.
 

 1.
 
 The complaint states a cause of action.
 

 Since we pass here upon an appeal from a judgment on the pleadings in favor of the defendant, we may not consider any defenses set forth in the answer.
 
 (Schwartz
 
 v.
 
 Schwartz
 
 (1946) 74 Cal.App.2d 711, 713 [169 P.2d 688].) All of the facts alleged in the complaint are deemed admitted and the question crystallizes into whether or not the complaint states a cause of action.
 
 (Hibernia S. & L. Soc.
 
 v.
 
 Thornton
 
 (1897) 117 Cal. 481, 482 [49 P. 573];
 
 Union F. M., Ltd.
 
 v.
 
 Southern Cal. F. M., Inc.
 
 (1938) 10 Cal.2d 671, 673 [76 P.2d 503].)
 

 The complaint alleges that the owners assigned to appellant the proceeds of the sales of the real property. According to the complaint the purposes of the assignments are to safeguard the lender’s investment and to effectuate the payment of construction costs in a specified manner by appellant. Appellant is to obtain full control of the funds until completion of performance under the control agreements. Respondent has wrongfully made certain deductions from the funds which are not sanctioned by the terms of the assignments ; the specified sums are due and owing, and respondent refuses to pay these amounts to appellant.
 

 It is clear that at the close of escrow the escrow holder became the agent of the seller.
 
 (Greenzweight
 
 v.
 
 Title Guar. & Trust Co.
 
 (1934) 1 Cal.2d 577, 582 [36 P.2d 186];
 
 Shreeves
 
 v.
 
 Pearson
 
 (1924) 194 Cal. 699, 707-708 [230 P. 448]; 18 Cal.Jur.2d § 14, pp. 325, 326.) At that point, since the escrow holder received notice of the assignments, it could not properly pay the funds to the assignor or to any other person. (Civ. Code, § 2344.)
 

 The case of
 
 Baumgarten
 
 v.
 
 California Pac. T. & T. Co.
 
 (1932) 127 Cal.App. 649 [16 P.2d 332] specifically holds that once funds in escrow have been assigned, and the escrow holder notified of the assignment, the escrow holder must observe such assignment, even though the assignor should give it contrary instructions. “ ‘An assignment having taken place, it was beyond the power of the assignor to revoke it and Mozingo’s [the assignor’s] subsequent attempts to do so were ineffectual. It likewise takes precedence over the subsequent assignments and levies of execution which form the
 
 *74
 
 basis of appellant’s claims to the fund.
 
 (Title Ins. etc. Co.
 
 v.
 
 Williamson,
 
 18 Cal.App. 324 [123 P. 245, 247].) ’ ” (P. 658.)
 

 Respondent unsuccessfully attempts to distinguish
 
 Baumgarlen
 
 on the ground that there the title company retained possession of the funds, and that the escrow instructions required distribution of part of the funds to the plaintiff. As to the retention of the funds, we find no allegation in the instant complaint that the funds had not been retained; the complaint does not allege that the money had been paid to the assignor or anyone else. Further, in the face of the fact that the escrow agent had notice of the assignments, the agent could not have properly discharged its obligation by paying the assignor. As to respondent’s distinction that the instructions in
 
 Baumgarten
 
 required disbursement to plaintiff, respondent here received notice of the assignment; such receipt of notice is tantamount to new instructions.
 

 The later ease of
 
 Roberts
 
 v.
 
 Carter & Potruch
 
 (1956) 140 Cal.App.2d 370, 373 [295 P.2d 515] likewise upholds the requirement that an escrow agent pay the assignee amounts payable after the agent receives notice of the assignment.
 

 Respondent’s contention that, appellant cannot recover because “it cannot possibly suffer damage” does not relate to the instant cause, which does not seek damages but the recovery of assigned funds by an assignee. To sustain its contention respondent urges that, by the terms of the agreements, appellant “exculpates itself from liability to anyone except the parties to the Control Agreements”; that “none of the moneys assigned to appellant were for its own account”; that, since it serves only as a disbursing agent, “Appellant is simply a conduit for money which it receives.” Appellant, however, sues as an assignee. Appellant does not seek recovery of
 
 damages
 
 for breach of contract.
 

 Indeed, we even question the basis of the argument that appellant lacks any interest whatsoever in the assigned funds. The assignments do not provide merely that appellant collect the funds and pay them over to the assignor, but that, after deduction of specified costs to cover the expenses of the escrow, appellant collect the funds and disburse them “pursuant to the terms of the said Control Agreement or any other agreements with Assignee.” The appellant retains 1% per cent of the estimated price of construction and all additional such costs above such estimated price as payment for services rendered. If appellant cannot obtain the funds from
 
 *75
 
 escrow, it cannot perform under the contract. Appellant thus shows at least some beneficial interest in the funds. We cannot believe, however, that appellant must sustain such a showing. Appellant, even if it were a mere assignee for collection, would state a cause of action for assigned funds.
 

 We find no merit in respondent’s further argument that appellant does not state a cause of action because it has not alleged that respondent owed a “legal duty” to it. According to respondent its “sole duty as an escrow holder is to close escrows in accordance with the instructions of the parties to the escrow.” We can conceive of no requirement that, to afford an assignee the right to recover assigned funds, held in escrow, the escrow holder must owe to the assignee some “legal duty” or have entered into a contract with the assignee. Respondent’s eases clearly do not suggest any such extraordinary principle.
 
 Routh
 
 v.
 
 Quinn
 
 (1942) 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215] and
 
 Southall
 
 v.
 
 Security Title Ins. etc. Co.
 
 (1952) 112 Cal.App.2d 321 [246 P.2d 74] do not deal with assignments at all.
 

 Finally, we note that respondents deny that “there were any improper deductions from sales proceeds in the escrows. ...” The complaint, however, alleges no justification for respondent’s deductions. The deductions may have constituted a payment of obligations incurred in connection with the sale of the homes and hence may fall within the scope of respondent’s contractual duty under the terms of the escrow agreement. If so, respondent did not “wrongfully, illegally, and negligently” permit such deductions. We are bound, however, by the contrary allegations in the complaint. If, on the other hand, respondent paid such sums to the assignors or to their creditors with knowledge of the assignments, in violation of the terms of respondent’s contractual agreement, then respondent’s obligation has not been discharged.
 
 (Nelson
 
 v.
 
 Fernando Nelson & Sons
 
 (1936) 5 Cal.2d 511, 516 [55 P.2d 859];
 
 McCloskey
 
 v.
 
 City & County of San Francisco
 
 (1884) 66 Cal. 104 [4 P. 1092].) Respondent’s contentions as to the propriety of the deductions may, of course, be raised at the trial.
 

 We conclude that the complaint contains allegations of fact sufficient to constitute a cause of action. Respondent’s contrary arguments rest on matters of defense not apparent on the face of the complaint and not available at this preliminary stage of the proceedings.
 

 
 *76
 
 2.
 
 Appellant is a proper party plaintiff.
 

 Respondent unsuccessfully contends that appellant does not constitute a proper party plaintiff and cannot command a standing to sue. Section 367 of the Code of Civil Procedure, which requires that actions be brought by the real party in interest, permits prosecution of choses in action by assignees. Thus the court held in
 
 Quan Wye
 
 v.
 
 Chin Lin Hee
 
 (1898) 123 Cal. 185 [55 P. 783] that, since the evidence “was sufficient to establish the fact of assignment, ” “ the action was brought in the name of the party in interest within the meaning of section 367 of the Code of Civil Procedure.” (P. 186.) Even if appellant were a mere assignee for collection, it could still bring this action for recovery of an assigned claim.
 
 (Harrison
 
 v.
 
 Adams
 
 (1942) 20 Cal.2d 646, 650 [128 P.2d 9].)
 

 While the parties discuss at length theories involving trusts and third party beneficiary contracts, we deal here with two unmistakable assignments of choses in action. These assignments comprise one aspect of the financing and management portions of building projects. Appellant is a proper party plaintiff, not as the beneficiary of a third party beneficiary contract, and hence as a “ trustee ’ ’ within the meaning of section 369 of the Code of Civil Procedure, but as the assignee of a chose in action. Although under the terms of the agreements appellant cannot retain the sums so assigned but must pay the sums as specified in the agreements and must conduct certain financial activities for the protection of the financier, it certainly possesses a sufficient interest in the proceeds to constitute it a real party in interest. Even a mere assignee for collection, who collects the funds and immediately pays them over to the assignor, commands such standing to sue.
 
 (Harrison
 
 v.
 
 Adams, supra,
 
 20 Cal.2d 646, 650;
 
 Hammell
 
 v.
 
 Superior Court
 
 (1932) 217 Cal. 5, 8 [17 P.2d 101]; 5 Cal.Jur.2d § 74, p. 368.)
 

 3.
 
 The licensing reqioirements for collection agencies are not applicable in the instant case.
 

 Respondent moved that this appeal and the entire action be dismissed on the ground that the complaint fails to state a cause of action on the grounds of illegality. Respondent’s position is that appellant’s conduct comes within the purview of section 6870 of the Business and Professions Code which provides that “ [n]o person shall conduct within this State
 
 *77
 
 a collection agency or engage within the State in the business of collecting claims for others, ... or of soliciting the right to collect or receive payment for any other person of any claim, or advertise, or solicit, either in print, by letter, in person or otherwise, the right to collect or receive payment for another of any claim, or seek to make collection or obtain payment of any claim on behalf of another person without having first applied for and obtained a license.”
 

 We shall point out that whether or not appellant holds such a license or falls within the excepted class, under section 6854 of the Business and Professions Code, appellant’s conduct under the instant agreements does not bring it within the purview of section 6870.
 

 Section 6852 of the Business and Professions Code provides: “ ' Collection agency’ means and includes all persons engaging, directly or indirectly and as a primary or secondary object, business or pursuit, in soliciting claims for collection or in the collection of claims owed or due or asserted to be owed or due to another. ’ ’
 

 We do not believe that the Legislature intended that this statute apply to the assignee of the proceeds of sales of property who must undertake litigation because of an unforeseen default of an obligor of the assigned claim. The parties sought, by means of their agreements, to protect the interests of the financier, to assure the payment of claims of materialmen and laborers and to achieve an orderly administration of the projects. The agreements themselves, when read as a whole, do not treat appellant as an agent for collection; nowhere does appellant even promise, or undertake, to collect disputed claims. Appellant acquired legal title to the claims in order to facilitate its control over them and to prevent the assignors from interfering with it. This relationship does not constitute a “collection agency” within the terms of the above statutes.
 

 Respondent moved to augment the record on appeal to include additional evidence consisting of a certification made by Vincent S. Dalsimer, Director of Professional and Vocational Standards of the State of California. The certificate states that appellant “is not licensed pursuant to Chapter 8 of Division 3 of the Business and Professions Code” and appellant has not applied for such a permit. Our conclusion, that appellant does not come within the scope of the instant provisions, necessarily disposes of respondent’s motion to augment the record.
 

 
 *78
 
 In summary, the transaction involved here is certainly not an uncommon one; it constitutes nothing more than an assignment. We can find no reason in the decisions or in commercial practice why such an assignment should not be recognized by an escrow holder who has received notice of it.
 

 We reverse the judgment, deny respondent’s motion to dismiss the action and the appeal, and deny respondent’s motion to augment the record on appeal.
 

 Bray, P. J., and Sullivan, J., concurred.