[Civ. No. 25960. Second Dist., Div. Four. May 13, 1963.]

BOB FEINBERG, Plaintiff and Respondent, v. INTRA-STATE ESCROW CORPORATION, Defendant and Appellant.

Lever & Anker, Melvin King, Kurt R. Anker and William G. Israel for Defendant and Appellant.

Henry Himmelfarb and Sidney E. Horvitz for Plaintiff and Respondent.

BURKE, P. J.—▪▪▪ Defendant has appealed from the judgment rendered against it in this action which was brought on the theory that defendant, acting as an escrow agent for one Patricia Kennedy, had cooperated with her in fraudulently representing to the plaintiff that he would receive over $4,000 out of the escrow. The trial court did not find the allegations of fraud to be true, but based its judgment on the closely analogous theory of estoppel and also on the theory that there was a breach of an obligation founded upon an instrument in writing. We have concluded that while the evidence fails to support the last theory it does support the judgment based upon estoppel.

Viewed most favorably to the prevailing party, the evidence showed that in June of 1956 one Patricia Kennedy owed plaintiff $2,800. Mrs. Kennedy owned a piece of property upon which she wished to borrow some money and opened an escrow with defendant to accomplish her purpose. Becoming aware, in some way, that plaintiff purposed to bring an action against her and attach her property, she and defendant came to an understanding with him. Plaintiff agreed to refrain from levying an attachment on the property against which Mrs. Kennedy was seeking to negotiate a loan, and she in turn agreed to instruct defendant to pay plaintiff from the proceeds of the expected loan, and defendant agreed to accept such instruction and to act upon it.

The trial court found that three such instructions were "prepared and accepted by defendant, with knowledge of the very valuable consideration moving from plaintiff and of his reliance on the agreement." Patricia Kennedy signed these instructions, the first one dated June 19, authorizing defendant to pay plaintiff $2,800, the second, three days later, increasing the amount to $3,800, and the third, July 24, increasing the total to $4,175 "to be paid upon close of escrow." The first two instructions appear in the first escrow and the third instruction in an escrow established to replace the first one. The reason for the several instructions appears from this

finding: "Plaintiff relied on the agreement and the escrow instructions hereinabove found, and in such reliance not only refrained from levying attachment on Mrs. Kennedy's said property, but even lent sums of money to Mrs. Kennedy additional to those that had been lent to her before such agreement was entered into and said instructions were given."

Looking at the escrow files we discover that the only instructions in the first two were those referred to signed by Patricia Kennedy, and that no money was ever placed in the custody of the defendant in either of them. A lender became a party to a third escrow, who intrusted $4,875 to it, the sum of $3,375 being the amount left over after the payment of charges and disbursements.

█ Viewed so far, we find that there was an escrow in which there was an instruction to the defendant that from the proceeds $4,175 was to be paid to plaintiff. Had there been such proceeds, plaintiff would have had a cause of action up to $4,175 against the defendant for plaintiff would appear as the third party beneficiary of an agreement made in part for his benefit. (*Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 487 [110 P.2d 396].) The cause of action, incidentally, would be one founded upon an instrument in writing (*Amen* v. *Merced County Title Co.*, 58 Cal.2d 528 [25 Cal.Rptr. 65, 375 P.2d 33]) and so not outlawed.

█ These are not all the facts, however. Not only were no proceeds ever in either of the first two escrows but two further instructions appear in the second escrow. First, an instruction dated August 1, signed by Patricia Kennedy, stated: "You are hereby authorized and instructed to ignore any authorization contained in amendment dated July 24, 1956. Said instructions are to be considered *null and void.*" Another instruction of the same date cancelled the escrow. It was only in the new escrow that commenced August 1 that there were any proceeds and this new escrow never contained an instruction that plaintiff was to be paid anything. It will not do, as the trial court "found," to say that the three escrows, having the same object, "constituted in reality one escrow transaction." █ An escrow, even one made for the benefit of a third party, is subject to cancellation before the third party enforces it. (Civ. Code, § 1559; *Orloff* v. *Metropolitan Trust Co., supra,* 17 Cal.2d 484, 487.) The fact is that there were, as stipulated, three escrows involved in this case.

█ Defendant, however, is estopped to rely upon the

switch over to the third escrow. It was an active participant in the arrangement by which plaintiff was to give up the exercise of his right to bring an attachment action in order that Mrs. Kennedy might obtain a loan. Defendant's president knew that plaintiff relied upon the arrangement made and carried out in the first two escrows, and so relying had not filed his action. Until put on notice that the arrangement made was not going to be carried out, plaintiff had a right to continue to rely on it, as he did.

From the evidence it is clear that defendant took no steps whatever to advise plaintiff of the cancellation of the escrow instructions. Defendant's president testified that she did not tell plaintiff of the closing of the escrow until after she had disbursed the money to Mrs. Kennedy and closed the escrow; that it never occurred to her to call plaintiff and tell him that the instructions to pay him funds out of the escrow had been cancelled.

Plaintiff testified that there were between five and ten telephone conversations with defendant's representatives, including defendant's president, in which he inquired about the status of the escrow and in which he indicated he saw no point in further waiting if it did not seem that the escrow was going to be completed and that he was going to sue and attach the property, but that he was assured by defendant's president that if he wouldn't sue and attach she would see to it that he would get his "money when the loan came through." She always informed him "that a loan was in the making, . . . that there was a loan forthcoming." At least one of these calls was after August 1 between the time of the cancellation of the escrow instruction in plaintiff's favor and the actual closing and disbursing of the funds on August 8. Other calls were placed by Mr. Rifkin for plaintiff to the same effect, Rifkin stating that he called "three times a week and maybe more, minimum of three times a week from June the 14th to August the 8th. . . ." On one occasion after August 1 defendant's president told plaintiff, in answer to a question as to whether a loan had been granted, "yes, that she wasn't sure but she thought there was a loan granted." When plaintiff learned from outside sources that a loan had in fact been made and that the escrow was being closed, Mr. Rifkin again called defendant's president for plaintiff on August 8 and asked, " 'How's the escrow doing?' She says, 'Well, Mrs. Pat Kennedy just came and picked up her check.' 'You mean, it's closed?' I said, 'What about Bob Feinberg?

Where is your check?' 'I'm sorry; it's just one of those things.' 'What do you mean, you're sorry; we depended upon you? What do you mean, you closed up the escrow without paying according to your escrow instructions, Bob Feinberg's money?' She said, 'Well, Pat Kennedy came in there and left them out of the escrow.' I said, 'We didn't take Pat Kennedy's word; we took your word, Miss Winthers, that you will protect Bob Feinberg.'" Plaintiff then contacted Miss Winthers and she told him that he "had been cancelled out of the escrow; that because of this she had gone down to a church on Wilshire Boulevard and she had seen the light and that she was going to pray for him."

██ If plaintiff had been put on timely notice that the instructions that protected him had been cancelled August 1, and he did nothing further to protect himself, defendant would not be estopped to point out the facts that ended plaintiff's trustful inaction. The evidence shows that, on the contrary, defendant actively lulled plaintiff into continuing his patient wait for the escrow to close by saying nothing of the cancelled instructions and by assuring him that all was well with the escrow and counseling further patience, while at the same time closing the escrow and disbursing Mrs. Kennedy $3,375, the full net proceeds of the escrow. Thus, as found by the trial court, this is a proper case for application of the principle of equitable estoppel. (*Sawyer* v. *City of San Diego,* 138 Cal.App.2d 652, 662 [292 P.2d 233].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 10, 1963.