[Civ. No. 7131. Fourth Dist. Nov. 29, 1963.]

WARINGTON LUMBER COMPANY, Plaintiff and Respondent, v. FULLERTON MORTGAGE & ESCROW COMPANY, Defendant and Appellant.

Lev & Lyon and Harmon G. Scoville for Defendant and Appellant.

Blodget, Cochran & Anderson and Lew W. Blodget for Plaintiff and Respondent.

GRIFFIN, P. J.—█ Defendant-appellant, Fullerton Mortgage & Escrow Company, appeals from a judgment in favor of plaintiff-respondent, Warington Lumber Company, for $26,756.27 in a breach of contract action brought by plaintiff-respondent, a building materials dealer who sold lumber and other building materials to Hintz Development Corporation. Hintz became delinquent in its account with plaintiff, owing about $120,000. Funds were being furnished to Hintz under a construction loan from a savings and loan company. Defendant had obtained this loan for Hintz and received a fee for this service. Upon learning that the payments or "draws" were being paid by the savings and loan company by means of checks payable to Hintz and J. W. Hartman, president and general manager of defendant escrow company, plaintiff informed defendant of its claim and said it would file a "withholding" notice with the savings and loan company unless defendant company would agree that plaintiff's claim would be taken care of out of the checks received from the savings and loan company. Defendant agreed to take care of plaintiff and sent the following letter, dated September 19, 1959, to it:

"Warrington [sic] Lumber Company
620 Vance Street
Santa Ana, California

"Attn: Charles Hester

"Dear Sir:

"Please be advised that Mr. Jack Hints, president of the Hintz Development Company, has authorized us to withhold the sum of $30,000.00 from each of the following draws, dated September 28, October 5, 12, and 19, until a total of $120,000.00 is paid in satisfaction of your indebtedness on tract 2511.

"Prior to release of funds to you on the draw of Octo-

ber 19, we will want a statement of agreement between you and Hintz Development Company as to the balance due and final settlement.

"Sincerely,
"John W. Hartman
President
"APPROVED BY:
"HINTZ DEVELOPMENT COMPANY
"J. T. Hintz by Arthur E. Hintz, att. in fact."

It is apparent that in reliance on this agreement the plaintiff did not file a withholding notice. Thereafter, defendant sent plaintiff $30,000 from each of the first three draws. However, when the fourth draw was received, Hartman immediately endorsed the check and delivered it to Hintz without notifying the plaintiff. Defendant claims Hintz informed it that plaintiff had been paid all that was due it, and therefore it endorsed the loan checks and turned them over to Hintz, without calling plaintiff for verification. Hartman testified that after October 19, 1959, he received loan checks each week for several successive weeks exceeding $30,000, that he was never advised by plaintiff that Hintz owed it any amount in addition to the three payments made, and that he had no knowledge of it until January 12, 1960, and on March 29, 1960, plaintiff filed the instant action against Hintz, this defendant and others, and that Hintz defaulted and no recovery was had against it.

The record indicates that a fourth check for $63,584.38 and one for $5,540, both dated October 19, 1959, and made payable to Hartman and Hintz, were brought to Hartman by Hintz, and on that same date, October 19, 1959, Hartman endorsed the checks over to Hintz without calling plaintiff because Hintz said his lumber bill with plaintiff had been paid except for some extras and he (Hartman) never inquired of plaintiff if it was true because he did not think that was a part of his responsibility. Additional checks for $50,000 and $83,000 were received by Hartman on October 26 and November 7 and turned over to Hintz without notifying plaintiff. The trial court found that the quoted letter did constitute a binding agreement and that a valid consideration did exist by reason of the agreement not to file a "withhold" notice so that plaintiff could continue to furnish building materials on the tract, and that defendant was liable thereunder to plaintiff for the amount of the judgment.

Defendant appealed and claimed: (1) that the court erred in finding that a binding contract so existed; that no contract existed between defendant and plaintiff because defendant was acting as the agent of Hintz and because there was no meeting of the minds; (2) that, assuming the existence of a contract, the court erred in failing to find a condition precedent; that defendant was not required to prove performance; (3) that, assuming the existence of a contract, the court erred in the construction of it when it concluded that defendant held itself out as an escrow company in this transaction and hence should have followed the practice that escrow companies universally followed; that the court erred when it ruled that evidence of defendant's intentions at the time of writing the letter was immaterial and that the only material thing was what plaintiff believed and was relying on; and (4) that, assuming the existence of a contract, the court erred in failing to hold that the plaintiff was estopped from enforcing it. Apparently, the original loan was for $2,000,000, and the savings and loan company agreed to pay all money to defendant company and Hintz jointly. Hartman testified that while he was in Europe his son signed an agreement in his name as attorney in fact to see that the money was applied to this tract, but on his return he called the savings and loan company and said that he would not accept this responsibility. He said his responsibility extended only to an off-site fund. Nevertheless, all checks continued to be paid to Hartman to have joint control with Hintz. At the trial, it was shown that Hintz was still, on October 19, 1959, indebted to plaintiff for lumber and materials in the amount found.

The letter and circumstances related were sufficient to support the trial court's finding that a binding agreement, for a valuable consideration, was executed by and between the parties. (*Amen* v. *Merced County Title Co.*, 58 Cal.2d 528 [25 Cal.Rptr. 65, 375 P.2d 33].) The claim that defendant was acting only as agent to Hintz would not necessarily relieve defendant of liability. ▋ When the check of October 19, 1959, came into the possession of defendant, defendant became the holder of funds which defendant had theretofore agreed to pay to plaintiff, and defendant was no longer merely a disbursing agent but was a principal under the agreement. ▋ Where an agent intentionally makes himself a party to a contract, recovery can be had against him as well.

(*Marshall* v. *Bernheim,* 64 Cal.App. 283 [221 P. 401]; *London* v. *Zachary,* 92 Cal.App.2d 654 [207 P.2d 1067].) ▮ Furthermore, neither defendant nor Hintz could unilaterally terminate the agreement, there being no option so providing. (*B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.,* 212 Cal.App.2d 689 [28 Cal.Rptr. 382].) It clearly appears that there was a meeting of the minds on the subject matter. The agreement was that defendant would withhold the fourth of the four payments until the total of $120,000 had been paid, in satisfaction of the indebtedness; that prior to the release of funds to plaintiff after the October 19 payment was received, defendant would want a statement or an agreement as to the balance due. There was never any agreement between plaintiff and Hintz as to the balance due. Defendant accepted only Hintz' statement in this respect, and it is clear that under the agreement defendant was to withhold payment of any funds received on October 19 until such an agreement had been reached; that the responsibility rested on defendant as well as plaintiff; that an inquiry of plaintiff by defendant would be reasonably anticipated before defendant was released from its obligation, and particularly so where the checks were endorsed over to Hintz the same day, October 19, 1963, the date when the payment was due to be paid to plaintiff.

▮ The complaint that the court erred in concluding that defendant held itself out as an escrow company and the parties should have followed the practice usually followed by escrow companies is untenable. Defendant's title is "Fullerton Mortgage and *Escrow* Company." (Italics ours.) It is quite apparent that defendant did hold the funds, at least jointly with Hintz, and was permitted to authorize the payment of these funds for and on behalf of the savings and loan company and Hintz. By this agreement, defendant became further bound to pay to plaintiff such funds in accordance with that agreement, and it was liable for the breach of the agreement regardless of the fact that it was dealing in a private capacity or as an escrow agent. (*Feeney* v. *Clapp,* 126 Cal.App. 729 [15 P.2d 178].) The intentions of the parties are sufficiently set forth in the document itself.

▮ As to the claim that plaintiff was estopped from recovering because it did not make timely demand for the balance due, this is without merit. It was from the fourth deposit, made on October 19, that defendant was bound to

withhold the amount agreed to be due, and not from payments made thereafter. Defendant disposed of this payment immediately upon receipt of it, without notifying plaintiff of this fact or giving plaintiff an adequate opportunity to show the amount claimed due. There was no obligation on plaintiff's part to furnish such a statement prior to October 19. No estoppel, as a matter of law, was shown.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.

A petition for a rehearing was denied December 19, 1963, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1964.