[Civ. No. 30015. Fourth Dist., Div. Three. Aug. 12, 1983.]

CONTEMPORARY INVESTMENTS, INC., Plaintiff and Respondent, v. SAFECO TITLE INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Everett H. Aspenson, J. Michael Cochran, Avi N. Miron, J. N. Laichas and Kerry B. Conway for Defendant and Appellant.

Walker & Hartley, Laura A. Myers and Joseph A. Walker for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Plaintiff Contemporary Investments, Inc., a real estate brokerage firm, sued First City Financial Corporation (Financial), Robert and Kathleen Fransen (the sellers), and Safeco Title Insurance Company for damages resulting from Financial's and the Fransens' refusal to pay a brokerage commission. Safeco alone appeals. Judgment was given against it on an intentional interference with contract count.

### FACTS

On October 26, 1979, the Fransens and Financial signed a real estate purchase contract and deposit receipt agreeing to sell certain property in Orange County to buyers. The contract promised a $7,950 commission to Contemporary on recordation of the deed.

An escrow was opened at Safeco. However the contract providing for payment of the commission was not deposited in the escrow. By April 2, 1980, both the Fransens and Financial signed escrow instructions directing that Safeco pay a $7,950 commission to Contemporary from the sale proceeds at the close of escrow. The transaction was set to record at 8 a.m. on April 9, 1980. On April 8, 1980, at 5:02 p.m., Fransens and Financial delivered to a Safeco secretary an escrow instruction revoking the commission order.

The deed was recorded on April 9, 1980. Some time after the recording, the Safeco escrow officer handling the escrow saw the revocation instruction. She consulted her office manager, and they decided not to pay any of the commission. They paid the $4,353.95 remaining in escrow to Fransens and Financial and paid nothing to Contemporary as the broker. The court awarded damages of $4,353.95 to Contemporary for Safeco's intentional interference with Contemporary's contractual right to its commission.

## DISCUSSION

The trial court found the sellers breached the commission contract. It also found Safeco interfered with the contract by releasing the funds, and Safeco had no duty to obey the escrow instruction cancelling the commission. The trial court believed the escrow had closed, for all practical purposes, on April 8, and the revocation was untimely.

█ "The elements of a cause of action for inducing breach of contract 'are: (1) that a valid contract existed between the plaintiff and another party; (2) that the defendant had knowledge of the contract and intended to induce a breach thereof; (3) that the contract was breached, (4) as a proximate result of the defendant's wrongful or unjustified [unprivileged] conduct, (5) resulting in damage to the plaintiff.'" (*Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 78 [154 Cal.Rptr. 43].)

Lois Stevens was the only Safeco employee called to testify by Contemporary. Contemporary failed to adduce any testimony relating to Stevens' knowledge of the existence or terms of the contract. Throughout the trial, Contemporary ignored the issue.

The only questions relevant to the knowledge issue were asked by Safeco's attorney. He asked Stevens to look in the escrow file she had in front of her and see whether she could find any contract between buyer and seller providing for a broker's commission. She could not. He also asked her if she had ever seen a copy of the contract between buyers and sellers, or if she knew whether anyone else at Safeco had seen the contract. She said, "No." Contemporary's broker also testified that Safeco did not get a copy of the contract.

Contemporary produced no testimony to sustain this element of its cause of action. On final argument, Contemporary did not even argue that Safeco knew about the contract. Nonetheless, the court found Safeco had knowledge of the existence of the contract.

At the close of the case, the court stated it would be a terrible precedent if sellers could cancel their commission instructions after escrow had closed. Safeco should have held onto the money because it had a "duty" to

do so. The court implied there were certain "demands" in the escrow file, and there was no timely cancellation of those demands. Thus, Safeco could not release the funds to the sellers. The court did not state why it believed Safeco had any knowledge of a contract to pay a broker's fee or of a contract to pay a fee only through escrow.

*1. Did Safeco Have Knowledge of the Existence of the Contract Providing for a Broker's Commission?*

Safeco argues that the judgment cannot be sustained because it had no knowledge of the existence of the contract. Contemporary's brief does not address this issue. Since there was no evidence at trial that Safeco had knowledge of the contract, we must agree with Safeco. Contemporary failed to meet its burden of proof on the issue and the judgment must be reversed.

*2. Did Safeco Have a Duty Not to Release the Money to the Sellers After a Cancellation of Commission Order Was Received?*

Contemporary argues that escrow agents may not release funds to a seller who cancels a commission order after escrow closes. Its most persuasive authority is *Ogdahl* v. *Title Ins. & Trust Co.* (1977) 72 Cal.App.3d Supp. 41 [140 Cal.Rptr. 148]. In *Ogdahl,* the sellers executed an escrow instruction reducing the broker's commission by $2,500 four hours after the deed to the buyers had been recorded and escrow had closed. The escrow agent paid the full commission to the brokers, and the sellers sued the escrow company for the $2,500. The court held once escrow had closed, the sellers could not unilaterally amend the instructions over the broker's objection. (*Id.,* at p. 44.)

*Ogdahl* is a curious and somewhat unclear opinion. To sustain its holding, the court cites *Warington Lbr. Co.* v. *Fullerton Mtge. & Escrow Co.* (1963) 222 Cal.App.2d 706, 711 [35 Cal.Rptr. 423], as authority for the proposition that: " '[W]here an escrow agent agrees with a party to the escrow and with his creditor to pay the creditor from proceeds held by the agent in the escrow, the agent is required to disburse these funds to the creditor *even though the party to the escrow attempts to cancel the agent's authority.*' " (*Ogdahl* v. *Title Ins. & Trust Co., supra,* 72 Cal.App.3d Supp. 41, 44.) However, in *Warington,* the escrow company was a principal in an agreement with plaintiff, with a duty to pay. It was no longer "merely a disburs-

ing agent" for another principal. (*Warington Lbr. Co.* v. *Fullerton Mtge. & Escrow Co.*, *supra*, 222 Cal.App.2d 706, 710.)

In the present case, there was no allegation in the complaint nor any proof at trial that Safeco entered into a contract with Contemporary, obligating Safeco as a principal to pay any money to Contemporary. In the *Ogdahl* case as well, no such contract existed.

The *Ogdahl* court then cites the rule that when the escrow agent has been notified the proceeds of sale have been assigned to a third party, he must pay the funds despite the attempts of the assignor to cancel. *Builders' Control Service of No. Cal., Inc.* v. *North American Title Guar. Co.* (1962) 205 Cal.App.2d 68, 70 [22 Cal.Rptr. 712] is given as authority. In *Builders'*, the complaint alleged a third party had assigned the sale proceeds to Builders'. The title company acted as escrow agent for the assigned funds but refused to pay the funds to Builders'. The court noted: "[O]nce funds in escrow have been assigned, and the escrow holder notified of the assignment, the escrow holder must observe such assignment, even though the assignor should give it contrary instructions." (*Id.*, at p. 73.)

Contemporary's complaint does not allege it was the assignee of funds held in escrow and that the escrow holder had been given notice of the assignment. It alleges only an interference with contract. The contract does not provide that the broker has a lien on the proceeds of sale or is the assignee of those funds. Its commission could have been paid outside of escrow, with other funds of the sellers. This case does not come within the rule in *Builders'*.

It is unclear from the facts in *Ogdahl* whether the defendant escrow company proved the commission instruction to escrow constituted an assignment. If so, then *Ogdahl* is but an application of the rule in *Builders'*. If not, then *Ogdahl* is not supported by the authorities it cites.

The *Ogdahl* court indicates once the escrow had closed, the seller could not unilaterally amend the escrow instructions over the broker's objections. (*Ogdahl* v. *Title Ins. & Trust Co.*, *supra*, 72 Cal.App.3d Supp. 41, 44.) However, in *Warington* and *Builders'*, the sellers could not amend the instructions either before or after close of escrow. The unwarranted significance the *Ogdahl* court placed on the closing of escrow has led to much confusion in the law applicable to escrow holders. If the escrow holder has no notice of assignment, it is his duty to comply strictly with the instructions of his principal. If he disposes of his principal's property in violation of those instructions, he is liable for any loss occasioned thereby.

(*Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 682 [30 Cal.Rptr. 658].) This applies before or after the close of escrow.

In this case, since Contemporary neither alleged nor proved that Safeco had been notified of any assignment of $7,950 to Contemporary out of the proceeds of sale, Safeco had to follow the instructions of its principals, both before and after close of escrow. To the extent *Ogdahl* suggests a contrary conclusion it is disapproved.

■ Lastly, we note Contemporary failed to prove Safeco's action in releasing the funds to the sellers caused a breach of the contract or constituted proof of Safeco's intention to induce a breach. The contract provided the sellers were to pay a commission of $7,950 on recordation of the deed. The contract did not require that the money be paid out of the proceeds of sale or be paid through escrow. Failure of the sellers to pay the brokers out of the escrow proceeds did not constitute a breach of contract, for nothing in the contract designated those proceeds as specifically belonging to the brokers. Thus, in giving the sellers the funds in escrow, Safeco was not inducing any breach. The sellers were still able to perform the contract by paying the brokers outside of escrow. There was no evidence Safeco induced the sellers not to pay the commission outside escrow.

■ The judgment is reversed and the trial court is directed to enter judgment for defendant Safeco.

Trotter, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied August 31, 1983.