105 Cal.Rptr.2d 352 (2001)
87 Cal.App.4th 1379
SUMMIT FINANCIAL HOLDINGS, LTD., Plaintiff and Respondent,
v.
CONTINENTAL LAWYERS TITLE COMPANY, Defendant and Appellant.
No. D036868.
Court of Appeal, Fourth District, Division One.
March 27, 2001.
Review Granted June 13, 2001.
*353 Wolf, Rifkin & Shapiro, Los Angeles, and Marc Eliot Rohatiner, for Defendant and Appellant.
Doumani & Grandon, Robert M. Grandon, Diamond Bar; Callahan & Blaine and Jim P. Mahacek, Santa Ana, for Plaintiff and Respondent.
McDONALD, J.
In 1994 Dr. Furnish, the maker of a promissory note secured by a deed of trust on real property in Corona Del Mar (referred to as the note, the deed of trust and the property, respectively), refinanced his secured obligations by obtaining a new loan from a new lender, a portion of the proceeds of which was to pay the note in full. Appellant Continental Lawyers Title Company (CLTC) provided escrow services for the refinance transaction and was instructed by the parties to the escrow to pay the note by issuing a check to Talbert Financial (Talbert). CLTC followed that instruction on closing of the refinance transaction.
In this lawsuit, respondent Summit Financial Holdings, Ltd. (Summit) sued CLTC for negligence. Summit alleged that in the refinance transaction CLTC should have paid the note by issuing a check to Summit rather than Talbert because CLTC knew Talbert had assigned its rights in the note and deed of trust to Summit. The trial court, relying on Kirby v. Palos Verdes Escrow Company, Inc. (1986) 183 Cal.App.3d 57, 227 Cal.Rptr. 785 (Kirby), concluded CLTC as escrow holder owed a duty of care to third parties, including Summit, who were not parties to the escrow; and breached that duty because CLTC, with knowledge of the assignment from Talbert to Summit, paid Talbert rather than Summit. The trial court awarded judgment to Summit against CLTC for negligence, and this appeal by CLTC followed.
Although CLTC raises numerous claims on appeal, the dispositive issue is whether Kirby correctly held that a stranger to the escrow is owed a duty of care by an escrow holder. We conclude an escrow holder owes a duty of care only to the parties to and participants in the escrow, and Kirby incorrectly held an escrow holder liable to a stranger to the escrow under a negligence theory. Because CLTC owed no duty of care to Summit, we reverse the judgment.

I

FACTUAL AND PROCEDURAL

BACKGROUND

A. The Loan

In August 1994 Furnish borrowed $425,000 from Talbert, and signed the note payable to Talbert. The note was secured by the deed of trust on the property. Both the note and the payment book given to Furnish required him to pay the monthly installments on the note to Talbert at Talbert's Orange, California address.[1]
*354 At the same time that the deed of trust was recorded, a document entitled "Assignment of Deed of Trust" was recorded that assigned the beneficial interest under the note and deed of trust from Talbert to Summit. However, neither Talbert nor Summit gave Furnish notice of the assignment, as required by Civil Code 2937.[2]

B. The Refinance

In September 1995 Furnish obtained a new loan from Dundrel Securities (Dundrel) that was used in part to pay the note. Furnish and Dundrel employed Beverly Hills Escrow (BHE) to handle the refinancing transaction, and CLTC acted as an escrow holder in connection with issuing the title insurance for the new deed of trust securing the new note payable to Dundrel. Summit was not a party to the BHE escrow or the CLTC escrow.
CLTC prepared a preliminary title report noting (at item 6) that the property was encumbered by a deed of trust securing the Talbert note, and that an assignment of the note and deed of trust from Talbert to Summit had been recorded. BHE thereafter obtained a note payoff demand from Talbert specifying the outstanding balance to be paid to Talbert to fully pay the note. On September 8, 1995, BHE forwarded Talbert's payoff demand to CLTC and identified it as the "Demand for item 6 on the Preliminary Title Report."
On close of the refinancing transaction, CLTC paid Talbert from funds deposited with CLTC by Dundrel in accordance with the payoff demand and BHE's instructions. Summit did not receive these funds from Talbert.

C. The Legal Proceedings

In February 1997 Furnish filed for protection under Chapter 11 of the United States Bankruptcy Code, and in April 1997 the bankruptcy court entered an order for sale of the property free and clear of all liens. The order directed that the proceeds of the sale be used to pay the amounts owed the first trust deed holder Dundrel and amounts owed to another secured creditor, and that any purported liens on the property held by other parties, including Summit, would attach to the remaining proceeds of the sale.
In July 1997 Furnish moved in the bankruptcy court for an order disallowing Summit's lien claim on the remaining proceeds from the sale of the property. Furnish argued the amount he paid Talbert in 1995 in the refinance transaction fully extinguished Furnish's obligations under the note. He established that he never received notice of the assignment of the deed of trust as required by section 2937, subdivision (d), and under section 2937, subdivision (f), a debtor's payment to the prior note holder before receiving notice of the assignment pro tanto extinguishes the underlying obligation. The payment to Talbert therefore fully extinguished the note. Summit opposed the motion, arguing that (1) the recorded assignment of the note and deed of trust was adequate to provide constructive notice of the transfer from Talbert to Summit, and (2) in any event Furnish received a notice that complied with section 2937, subdivision (d). The bankruptcy court concluded Furnish was not given the notice required by section 2937, subdivision (d) and the payment to Talbert extinguished the note under section 2937, subdivision (f). It therefore disallowed Summit's lien claim on the remaining proceeds for the sale of the property.
In this proceeding, Summit sought recovery from CLTC of the note payment CLTC made to Talbert, contending that CLTC was negligent by making the note payment to Talbert rather than to Summit. The trial court concluded Kirby was controlling *355 and that CLTC owed a duty of care to Summit. The trial court further found that CLTC was negligent, breached its duty of care to Summit, and CLTC's negligence was a proximate cause of Summit's injury. Accordingly, the trial court entered judgment for damages in favor of Summit against CLTC.[3]

II

ANALYSIS

A. Standard of Review

Summit argues that whether CLTC owed a duty of care to Summit involves the resolution of disputed facts, and we must therefore defer to the trial court's ruling if it is supported by substantial evidence. However, Summit cites no authority supporting that argument, and the courts have concluded that whether a duty of care exists is a question of law for the court; our review of the trial court's ruling is therefore de novo. (Koepke v. Loo (1993) 18 Cal.App.4th 1444, 1450-1451, 23 Cal. Rptr.2d 34; Delgado v. American Multi-Cinema, Inc. . (1999) 72 Cal.App.4th 1403, 1406-1407, 85 Cal.Rptr.2d 838.)

B. Kirby Erred by Imposing on Escroiv Holders a Duty of Care to Strangers to the Escrow

An escrow holder is the dual agent of, and owes duties to, the parties to the escrow. The primary duty owed by an escrow holder is to strictly and faithfully perform the instructions given to it by the parties to the escrow. (Vournas v. Fidelity Nat. Tit, Ins. Co. (1999) 73 Cal.App.4th 668, 674, 86 Cal.Rptr.2d 490.) An escrow holder owes ancillary duties to the parties to the escrow, including a duty "to communicate to his principal knowledge acquired in the course of his agency with respect to material facts [that] might affect the principal's decision as to a pending transaction, particularly where, as here, he knows that the principal is looking to him for protection as to those very facts of which he has knowledge." (Contini v. Western Title Ins. Co. (1974) 40 Cal.App.3d 536, 547, 115 Cal.Rptr. 257.) If the escrow holder breaches this obligation of disclosure, or does not exercise reasonable skill and diligence in carrying out the escrow instructions, the escrow holder can be liable to its principal for any resulting injury. (Colonial Savings & L. Assn. v. Redwood Empire Title Co. (1965) 236 Cal.App.2d 186, 190-191, 46 Cal.Rptr. 16.) However, an escrow holder ordinarily incurs no liability for failing to do something not required by the escrow instructions or for a loss caused by following the escrow instructions. (Axley v. Transamerica Title Ins. Co. (1978) 88 Cal.App.3d 1, 9, 151 Cal.Rptr. 570; accord, Romo v. Stewart Title of California (1995) 35 Cal.App.4th 1609, 1618 fn. 9, 42 Cal.Rptr.2d 414 [obligation of escrow holder limited to faithful compliance with instructions from the principal].)
Kirby appears to be the only case that holds an escrow holder can be liable to strangers to the escrow for injuries allegedly caused by the escrow holder following its principals' instructions.[4] We conclude that the case law on which Kirby relied for its legal analysis does not support the conclusion it reached, and we disagree with Kirby's holding that an escrow holder who follows its principals' instructions can be liable to strangers to the escrow under a negligence theory.[5]
*356 In Kirby, the plaintiffs loaned funds to Universal and received an unsecured promissory note from Universal. Universal loaned funds to the Pierces and received a note secured by a deed of trust; Universal assigned the Pierces' note and deed of trust to plaintiffs as security for Universal's note to plaintiffs and the assignment was recorded. The Pierces opened an escrow with defendant escrow holder to refinance the note they had given to Universal. Universal submitted a payoff demand to the escrow holder and the Pierces authorized the escrow holder to pay Universal's demand. The escrow holder paid Universal although it was aware Universal had assigned the Pierces' note to the plaintiffs. Plaintiffs later sued the escrow holder, alleging that because it was aware of the recorded assignment of the Pierces' note from Universal to plaintiffs it performed its escrow duties negligently by paying Universal rather than plaintiffs. (Kirby, supra, 183 Cal.App.3d at pp. 60-61, 227 Cal.Rptr. 785.) Kirby held the defendant escrow holder liable to the plaintiffs on a negligence theory.
Kirby's analysis began with a review of established principles governing an escrow holder's role and duties.[6]Kirby recognized an escrow holder is a limited agent of the parties to the escrow, representing these principals only insofar as it carries out the escrow instructions, and that a breach of an escrow holder's duty to use reasonable skill and diligence in implementing the escrow instructions exposes it to liability for any resulting injury suffered by its principals. (Id. at pp. 64-65, 227 Cal.Rptr. 785.) However, after citing numerous cases that describe the duties owed by an escrow holder to its principal, Kirby relied on Builders' Control Service of No. Cal., Inc. v. North American Title Guar. Co. (1962) 205 Cal.App.2d 68, 22 Cal.Rptr. 712 (Builders' Control Service) to hold that an escrow holder owes the same obligations to nonparties to the escrow. The Kirby court noted that the escrow holder had constructive knowledge of the assignment of the Pierces' note from one nonparty (Universal) to another nonparty (the plaintiffs), and then stated:
"Receipt of notice of the assignment was equivalent to the receipt of new escrow instructions regarding the party to be paid. [Citing Builders' Control Service.] Such `new' instructions conflicted with the Pierces' verbal instructions to pay Universal. This conflict should have alerted defendant to a potential problem in paying Universal rather than the [plaintiffs], and vice versa. As the escrow holder faced with conflicting instructions, [defendant] had the duty to delay payment of escrow funds until such time as the proper payee was identified. [Citation.] ...
"Notwithstanding the fact that payment to Universal would have been proper under the provisions of the [Commercial Code], that act represented a violation of defendant's overriding duty as an escrow *357 agent.... [Defendant] may be held accountable for the loss it occasioned by negligently paying escrow funds to the wrong party." (Kirby, supra, 183 Cal.App.3d at pp. 65-66, 227 Cal.Rptr. 785.)
Kirby's holding rested on its reading of Builders' Control Service that (1) knowledge of an escrow holder that a nonparty distributee of funds from the escrow has made an assignment of the right to receive those funds is deemed an amendment to the escrow instructions by the parties to the escrow, and (2) an escrow holder who follows the parties' instructions rather than the "deemed amended" instructions is exposed to liability even though its principals suffer no injury from the fact the escrow holder followed its principals' instructions.
Kirby's holding is flawed because Builders' Control Service does not stand for either legal proposition. In Builders' Control Service, a lender agreed to fund the owner-builder's construction of homes and deposited the loan proceeds with the plaintiff, a fund control agent; plaintiff was to use those funds to pay the construction costs. The parties also agreed that the owner-builder would assign the proceeds from the sale of the newly constructed homes to the plaintiff fund control agent as an additional source to pay the construction costs. The defendant acted as escrow holder for the proceeds of the home sales knowing the owner builder had assigned the sales proceeds to the plaintiff fund control agent. (Builders' Control Service, supra, 205 Cal.App.2d at pp. 70-71, 22 Cal.Rptr. 712.) The issue in Builders' Control Service was whether the escrow holder, knowing its principal had assigned the sales proceeds held by it, was obligated to disburse those proceeds to the owner's assignee, the fund control agent.
Although the Builders' Control Service court concluded the escrow holder was obligated to disburse the funds to the owner-builder's assignee, the principles it applied have no application to whether an escrow holder owes duties to a nonparty based on an assignment made by a stranger to the escrow to a stranger to the escrow. The Builders' Control Service court first noted that when a home sale escrow closed, the escrow holder held the sales proceeds as agent for the owner-builder principal. The Builders' Control Service court then cited section 2344 for the rule that, when a principal has assigned funds to a third party, an agent for that principal who comes into possession of those funds must surrender them to the third party. (Id. at p. 73, 22 Cal.Rptr. 712.) Thus, Builders' Control Service stands for the proposition only that an agent's obligation to disburse proceeds held by the agent for its principal is coextensive with the principal's obligation to disburse those proceeds to the assignee.[7]
In our view, Kirby misread Builders' Control Service. Builders' Control Service holds only that an agent's knowledge of an assignment by its principal obligates the agent to honor the principal's assignment; [8]Kirby transformed that obligation, *358 which is founded in the law of agency, into a duty owed to honor contracts made by creditors of the principal even though the escrow holder had no agency relationship with the creditor. Moreover, the agent's obligation to the third party under Builders' Control Service is coextensive with the principal's obligation to the third party; Kirby transmuted the agent's obligation into one that is independent of the principal's obligation because it held the agent liable on the note even though the principal was exonerated from further liability on the note by the payment to Universal.
An escrow holder is an agent of the parties to the escrow and is responsible for following the escrow instructions of its principals. Kirby is the only case of which we are aware that holds an escrow holder who follows its principal's instructions, and whose action caused no injury to the principals, can nevertheless be liable to strangers to the escrow for negligence. Because Kirby's holding was based on a misconstruction of existing law, we are convinced it was erroneously decided and should not be perpetuated. We therefore conclude that the trial court's judgment, to the extent it rests on Kirby, was erroneous and must be reversed.

C. An Escrow Holder Owes No General Duty of Care to a Nonparty Stranger to the Escrow

Summit alternatively argues the judgment was proper because all persons are liable for injuries caused by their negligent conduct. (§ 1714, subd. (a).) However, whether a duty of care exists is the foundational legal issue, and "[recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law." (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 57-58, 77 Cal. Rptr.2d 709, 960 P.2d 513 [declining to find duty].) In Biakanja v. Irving (1958) 49 Cal.2d 647, 320 P.2d 16, the court stated at page 650, 320 P.2d 16 that: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the forseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." It is the general rule that an escrow holder incurs no liability for failing to do something not required by the terms of the escrow or for a loss caused by following the escrow instructions. (Axley v. Transamerica Title Ins. Co., supra, 88 Cal.App.3d at p. 9, 151 Cal.Rptr. 570.) Application of the Biakanja factors convince us we should not depart from this general rule.
First, the transaction CLTC undertook was not intended to affect or benefit Summit. CLTC was engaged by Dundrel and Furnish to assist them in closing a loan transaction between Dundrel and Furnish, and any impact that transaction may have had on Summit was collateral to the primary purpose of the escrow. Second, although the certainty of injury element is satisfied because the evidence supports the conclusion Summit did not receive the funds paid to Talbert, the forseeability of harm element does not support a duty because there is no suggestion CLTC could have foreseen that Talbert would default on its obligation to disburse the funds to Summit as Talbert had agreed to do under the assignment.[9]
*359 The next two factors also militate against imposing a duty on CLTC. We do not assign moral blame to the act of paying Talbert rather than Summit where that act fulfilled CLTC's duty as an escrow holder to perform the instructions given to it by the parties to the escrow (Vournas v. Fidelity Nat. Tit. Ins. Co., supra, 73 Cal. App.4th at p. 674, 86 Cal.Rptr.2d 490), and was an act authorized by statute (§ 2937, subds.(d), (f)). Furthermore, there is not a sufficiently close connection between the payment of Talbert and the injury suffered by Summit to warrant imposition of a duty of care. Although the payment to Talbert extinguished Furnish's obligation under the note, Summit's injury was caused by its own noncompliance with its statutory obligations (§ 2937, subd. (d)) and because Talbert breached its contractual obligation to Summit.
Finally, we decline to impose the duty advocated by Summit for reasons analogous to those articulated in Sanchez v. Lindsey Morden Claims Services, Inc. (1999) 72 Cal.App.4th 249, 84 Cal.Rptr.2d 799. In Sanchez, an independent insurance adjuster was hired by the insurer to assist it in discharging the insurer's obligation to pay its insured for a loss covered by the policy. The insured sued the claims adjuster, alleging the adjuster negligently handled the claim and caused economic injury to the insured. The Sanchez court, applying the Biakanja v. Irving factors as refined by Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745, explained at pages 253-255, 84 Cal.Rptr.2d 799 the reasons it would not impose on the adjuster a duty of care to the insured. The Sanchez court noted the adjuster is subject to the control of its principals, and it is the principal that ultimately decides whether to pay the insured, and thus any injury to the insured is primarily attributable to the principal's actions. Moreover, the insurer may by contract limit its exposure to the insured but an adjuster does not have that contractual ability; imposing a duty to the insured could create the anomaly that the adjuster is exposed to greater liability than the principal. Sanchez also noted that an adjuster owes a duty of loyalty to its principal; imposing a duty toward the insured would be poor policy because the conflicting obligations would interfere with the adjuster's faithful performance of its duty toward the principal. (Accord, Gay v. Broder (1980) 109 Cal.App.3d 66, 74-75, 167 Cal.Rptr. 123.) Finally, the goal of deterring negligent conduct would not be significantly advanced by imposing a duty because adjusters are already deterred by the fact that the principal who hired them can seek indemnity from the adjuster for negligent conduct.
The Sanchez court buttressed its conclusion not to impose on the adjuster a duty of care to the insured with the observation that:
"Our conclusion is also consistent with the general law of agency. An adjuster is an agent hired by a principal, the insurer, to investigate a claim. Agents are not liable to third parties for economic loss: `An agent's mere failure to perform a duty owed to his principal may render him liable to third persons who rely on his undertaking where there is physical damage to person or property. [Citation.] But where the effect is merely to cause economic loss, the law does not yet recognize liability to a third person, except where a duty is created by statute.' [Citation.]" (Sanchez v. Lindsey Morden Claims Services, Inc., supra, 72 Cal.App.4th at p. 255, 84 Cal. Rptr.2d 799, italics omitted.)
Similar considerations support our conclusion in this case. First, an escrow holder is subject to the control of its principals, and it is the principal that issues the instructions to be followed by the escrow *360 holder. Second, imposing a duty here would have the anomalous effect that the original debtor is exonerated from liability on his debt by his agent's payment to Talbert but the agent making that payment for its principal becomes liable on that debt. Third, imposing a duty would be poor policy because it would subject the escrow holder to conflicting obligations and interfere with its primary duty to follow its principal's instructions. Finally, the goal of deterring negligent conduct would not be significantly advanced by imposing a duty because escrow holders are already deterred by the fact that the principal who hired them can seek indemnity from the escrow holder to the extent the principal was injured by the escrow holder's negligence.

D. Conclusion

We hold that CLTC did not owe a duty of care to Summit under Biakanja v. Irving, supra, 49 Cal.2d 647, 320 P.2d 16. We also conclude Kirby was incorrectly decided and should not be followed. Accordingly, there is no basis for permitting Summit to recover from CLTC.

DISPOSITION
The judgment is reversed. Appellant shall recover costs on appeal.
NARES, Acting P.J., and O'ROURKE, J, concur.
NOTES
[1] Under the terms of the note, the first six monthly installments were impounded. Furnish paid three other monthly installments to Talbert in June, July and August 1995. Other than the impounded amounts and these three payments, Furnish made no payments on the note.
[2] All statutory references are to the Civil Code unless otherwise specified.
[3] The trial court reduced the damage award sought by Summit because it concluded Summit was contributorily negligent.
[4] Kirby appears to be the first California case to permit a stranger to the escrow to recover against the escrow holder for negligence, and this aspect of Kirby has not been followed by any reported California case.
[5] The cases in which escrow holders have been held liable to third parties did not involve third parties who were strangers to the escrow. For example, in Warington Lbr. Co. v. Fullerton Mtge. & Escrow Co. (1963) 222 Cal.App.2d 706, 35 Cal.Rptr. 423, the escrow holder entered into an agreement with the third party to pay funds to the third party upon receiving the money, and the escrow holder's liability rested on the court's conclusion that the escrow holder "was no longer merely a disbursing agent but was a principal under the agreement." (Id. at p. 710, 35 Cal.Rptr. 423.) Similarly, in Feinberg v. Intrastate Escrow Corp. (1963) 216 Cal.App.2d 80, 30 Cal.Rptr. 781, the plaintiff-creditor agreed to withhold levying on property in return for the agreement by both the property-owner debtor and the escrow holder to pay the plaintiff on funding of a new loan on the property. The court held the escrow holder was estopped to deny liability to the plaintiff because the escrow holder actively participated in inducing the plaintiff to detrimentally rely on the promise of payment. (Id. at pp. 82-85, 30 Cal.Rptr. 781.)
[6] In the earlier portion of its opinion, Kirby recognized the Pierces were entitled to pay Universal, even though Universal had assigned the Pierces' promissory note to the plaintiffs, because an obligor is entitled to pay the original obligee until the obligor receives notification of the assignment, and merely recording the assignment does not suffice as notification that required payment be made to the assignee. (Kirby, supra, 183 Cal.App.3d at pp. 62-63, 227 Cal.Rptr. 785.) That aspect of Kirby is consistent with current law (see § 2937, subds. (d), (f)), and validates the bankruptcy court's ruling that the payment to Talbert exonerated Furnish's liability under the note.
[7] The core holding of Builders' Control Service is confirmed by an understanding of the purpose and scope of the duties created by section 2344. As explained by the court in Garrison v. Edward Brown & Sons (1944) 25 Cal.2d 473, 482-483, 154 P.2d 377, the obligation owed by an agent under section 2344 as to funds held by the agent for its principal is limited to what the claimant would otherwise be entitled to recover from the agent's principal; the "purpose of section 2344 ... is to avoid circuity of action rather than to enlarge the scope of the recovery to which the claimant is entitled against the principal."
[8] Kirby's citation to Builders' Control Service as holding that receipt of notice of the assignment was equivalent to the receipt of new escrow instructions regarding the party to be paid demonstrates Kirby's misreading of Builders' Control Service. In the context of Builders' Control Service, the agent's receipt of notice of the assignment could be deemed the equivalent of a new instruction regarding the party to be paid because the assignment was made by the owner-builder, a party to the escrow entitled to give instructions to the escrow holder. However, Kirby transmuted that agency concept into a holding that transactions by strangers to an escrow can supersede and amend the instructions given by the parties to the escrow. Nothing in Builders' Control Service supports that remarkable conclusion.
[9] In arguing for imposition of a duty, Summit emphasizes that CLTC knew Summit was the assignee of the note and deed of trust and knew or should have foreseen that payment to Talbert would injure Summit. However, foreseeabilily of financial injury to third persons is not alone sufficient to impose liability for negligent conduct. (Quelimane Co. v. Stewart Title Guaranty Co., supra, 19 Cal.4th 26, 57-58, 77 Cal.Rptr.2d 709, 960 P.2d 513.)