[Civ. No. 22287. Second Dist., Div. One. Dec. 30, 1957.]

CITIZENS UTILITIES COMPANY (a Corporation), Appellant, v. HENRY H. WHEELER et al., Respondents.

Loeb & Loeb and Herman F. Selvin for Appellant.

Gibson, Dunn & Crutcher, Richard E. Davis and John L. Endicott for Respondents.

FOURT, J.—The plaintiff Citizens Utilities Company, a Delaware corporation, brought an action for specific performance of a memorandum of agreement concerning the proposed sale of all of the issued and outstanding stock of Park Water Company, a California corporation; or alternately, for damages for breach of said memorandum; and for declaratory relief. This is an appeal from a judgment in favor of defendants, declaring the memorandum of agreement to be so uncertain as not to be enforceable at law or in equity. Richard L. Rosenthal was President of Citizens Utilities Company, hereinafter called "Citizens," which company was interested in acquiring additional water utility company holdings in the State of California. The defendant Henry H. Wheeler was President of Park Water Company, a California public utility supplying water service to an area located in the southeastern part of Los Angeles County. Wheeler and the other defendant stockholders were interested in selling their stock in Park Water Company, hereinafter referred to as "Park."

On October 3, 1953, Rosenthal toured the property of Park with Wheeler and J. B. Hanauer, who had been authorized to offer all of the Park capital stock to Citizens at a price of $3,000,000. At this time Rosenthal and Wheeler discussed the pending application for an increase in Park's rates and the method of handling extensions of service to subdividers as well as the service territory, facilities, water supply and certain material Rosenthal wanted to consider prior to making an offer for the acquisition of the company.

On October 16, 1953, Rosenthal sent a proposal to purchase all of the stock to Wheeler at a base price of $2,800,000, which price was to be subject to certain adjustments but in no event was to be reduced below $2,300,000. Additional correspondence and telephone calls between the parties resulted in a meeting in Los Angeles on November 16, 1953, at the office of Mr. Utt of the law firm representing Wheeler, at which time Rosenthal dictated the memorandum of agreement upon which this action is based. Minor revisions were made, the memorandum was typed in final form and, as signed by the prospective buyer and sellers the same or the following day, is as follows:

"Memorandum of Agreement

"This Agreement, dated as of November 16, 1953, by and between Citizens Utilities Company, a Delaware corporation (hereinafter called Citizens), and V. E. Motz, Florence A. Richardson, O. D. Collins, Henry H. Wheeler, and Henry M. Wheeler, Jr., being all of the stockholders of Park Water Company, a California corporation (hereinafter called the Sellers),

"Witness That,

"Whereas, Citizens and the Sellers have been negotiating for the purchase by Citizens and the sale by the Sellers of all of the issued and outstanding stock of the Park Water Company; and

"Whereas, Citizens and the Sellers have come to certain understandings in respect to such purchase and sale,

"Now, Therefore, the parties hereto mutually covenant and agree as follows:

"1. Citizens and the Sellers have agreed upon the following terms as a basis for a contract subsequently to be entered into for the purchase by Citizens and the sale by the Sellers of all of the issued and outstanding common stock of the Park Water Company.

"2. The purchase contract is to provide for a base price for all of such issued and outstanding common stock in the sum of Two Million Eight Hundred Thousand Dollars ($2,800,000), subject to adjustment as set forth below.

"3. Of this sum, Citizens is to pay over the sum of Two Million Four Hundred Thousand Dollars ($2,400,000) on a closing date to be provided for in the purchase agreement, but, in no event, to be more than sixty (60) days from the date of such purchase agreement.

"4. Park Water Company has applied to the Public Utilities Commission of the State of California for authority to adjust and increase its rates for water service, such application being dated September 4, 1953. Such rate increase application, at page 5 thereof, estimates that the rates sought by Park Water Company would produce an increase in revenues for the year 1953 of Five Hundred Twenty-nine Thousand Dollars ($529,000) over and above the revenues actually realized for 1953 at existing rates if such increased rates had been in effect for the entire year 1953. If the rates as finally ordered and established by the Commission when applied to actual 1953 consumption and customers in-

dicate that they will produce an increase in revenues on that base of not less than Five Hundred Twenty-nine Thousand Dollars ($529,000), then, in such event, the complete purchase price shall be Two Million Eight Hundred Thousand Dollars ($2,800,000) and the additional sum of Four Hundred Thousand Dollars ($400,000) over and above the initial payment of Two Million Four Hundred Thousand Dollars ($2,400,000) shall be paid over to the Sellers as complete and final payment.

"5. In the event that the permanent rates as finally established by the Commission are not the rates for which Park Water Company has applied, then, in that event, a mutually acceptable independent expert shall apply the rates as ordered and established by the Commission to the 1953 actual consumption and customer data and advise both Citizens and the Sellers of the additional revenues which such permanent rates as ordered by the Commission would have produced based on such 1953 actual consumption and customer data; and the purchase price and final payment to the Sellers shall be reduced in the amount of Five Thousand Dollars ($5,000) for every One Thousand Dollars ($1,000) deficiency in revenue indicated as resulting from the Commission-ordered rates (applied to 1953 consumption and customers) below the Five Hundred Twenty-nine Thousand Dollars ($529,000) increase which the rates applied for by Park Water Company are represented to produce, based on 1953 consumption and customer data.

"6. In no event, however, is the purchase price to be reduced below Two Million Four Hundred Thousand Dollars ($2,400,000), provided that there is no material disallowance by the Public Utilities Commission of the State of California with respect to plant account as set forth in the accounts of Park Water Company as at June 30, 1953.

"7. It is contemplated that upon the payment of aforesaid Two Million Four Hundred Thousand Dollars ($2,400,-000) all of the common stock of the Park Water Company shall be transferred to Citizens contemporaneously with the undertaking by Citizens to make additional payments as hereinbefore defined up to a maximum total price of Two Million Eight Hundred Thousand Dollars ($2,800,000) in the event that the rates as established by the Commission would, when applied to 1953 consumption and customer data produce an increase of revenues of not less than Five Hundred Twenty-nine Thousand Dollars ($529,000), said total purchase price to be reduced in the amount of Five Thousand Dollars

($5,000) for every One Thousand Dollars ($1,000) in increase of revenues less than Five Hundred Twenty-nine Thousand Dollars ($529,000), limited, however, as above set forth.

"8. Citizens and the Sellers agree to proceed forthwith and in good faith to formulate and execute a purchase agreement which shall incorporate the provisions contained in this memorandum of agreement and shall include other necessary provisions such as: the adequacy of the properties, franchises, certificates of convenience and necessity and other rights of Park Water Company necessary to enable it to carry on its business as a water public utility in the State of California and in its service territories; the nature and adequacy of the titles of Park Water Company to its properties, contracts, and other rights; the absence of material adverse changes; legal approval; necessary consents of stockholders, transactions pending the closing date other than in the ordinary course of business; and other pertinent matters.

"9. The Sellers shall jointly and severally represent and warrant balance sheets and income accounts as of September 30, 1953, copy of which is attached to the original hereof and December 31, 1953, the December 31, 1953, financial statements to be statements certified by an independent public accountant; and such representation and warranty shall be with particular reference as against material negative changes in assets and liabilities or undisclosed liabilities including but not limited to taxes, including Federal income taxes.

"10. The purchase agreement shall contain customary provisions with respect to no material adverse changes in the business, its property, or its earnings in the period between the execution of the purchase agreement and the final payment.

"11. The purchase agreement shall provide that the Sellers will continue to operate the property with due diligence and in unchanged manner pending the final payment; and also that the Sellers undertake to carry on and diligently prosecute to a conclusion and seek prompt decision on the pending rate increase application.

"12. The purchase agreement shall provide that Henry H. Wheeler will agree to continue employment with the Park Water Company for as long as Citizens desires his services but for a period of not in excess of one (1) year such service to be terminable at any time in such one (1) year period at Citizens' election.

"13. The Sellers agree that after the sale they will permanently withdraw from the water public utility business in areas contiguous to those now served by Park Water Company and will not reenter the water public utility business directly or indirectly in such areas.

"14. In the sixty (60) day period between the execution of the purchase agreement and the payment date, Citizens will cause an investigation to be made at Citizens' expense of the business, property, and facilities of Park Water Company to determine the adequacy of the facilities of Park Water Company. In the event that such investigation causes Citizens to conclude that the facilities of Park Water Company are not adequate properly to carry on its activities or that the condition of such facilities reveals that they have not been properly maintained, then, in such event, Citizens shall notify the Sellers to this effect within such sixty (60) day period and shall have no further obligation with respect to the purchase. Failing such notification to the Sellers, Citizens shall be obligated to consummate the purchase on the terms and conditions as hereinbefore set forth, subject only to permanent injunction prohibiting the acquisition by any court or by any public authority or agency having power in the premises.

"15. Notification by either party under this agreement, or under the purchase agreement to be prepared, to the other party shall be given in writing. If given to Citizens, it shall be mailed to it at 125 East Putnam Avenue, Greenwich, Connecticut; if given to Sellers, it shall have been deemed to have been given if directed to Henry H. Wheeler, 4206 East Rosecrans Avenue, Compton, California. Notice shall be mailed registered mail and shall be effective upon mailing.

"The foregoing agreement is executed and dated at Los Angeles, California, this 16th day of November, 1953.

"CITIZENS UTILITIES COMPANY,
a Delaware corporation,

"By [s] Richard L. Rosenthal
 RICHARD L. ROSENTHAL,
 President

 [s] V. E. Motz
 V. E. MOTZ

 [s] Florence A. Richardson
 FLORENCE A. RICHARDSON

[s] O. D. Collins
 .O. D. COLLINS

[s] Henry H. Wheeler
 HENRY H. WHEELER

[s] Henry H. Wheeler, Jr.
 HENRY H. WHEELER, JR.

 "Sellers."

Thereafter buyer and sellers and their respective counsel spent more than four months attempting to agree upon the terms of the purchase agreement which the memorandum provided was to be formulated and executed. Much correspondence passed between the parties and their counsel, and each of the parties prepared and submitted two drafts of such an agreement, and each of the parties contended the other was attempting to vary the provisions of the contract contemplated in the memorandum. The instant action resulted when the parties failed to reconcile their differences as to certain of the provisions to be included in the purchase agreement.

The trial judge, having heard the oral testimony which consumed approximately eight court days, having read the voluminous correspondence between the parties and their respective counsel introduced in evidence as exhibits, and having heard argument by counsel, found that the memorandum was incomplete, indefinite and uncertain in several material respects, the more significant findings of fact being as follows:

"13) Defendant shareholders, on November 16, 1953, and plaintiff on November 17, 1953, signed a document entitled 'Memorandum of Agreement' (hereinafter referred to as 'Memorandum') relative to the proposed sale to the plaintiff of all of said 80,000 outstanding shares of stock of Park owned by said defendants. A true and correct copy of said Memorandum is attached to the answer of said defendants herein and is identified therein as 'Exhibit A' thereof.

"14) Said Memorandum and any purported agreement asserted by plaintiff were and are incomplete, indefinite and uncertain in that there was never any agreement or meeting of the minds of the parties, either expressly or by implication, by word or conduct, or otherwise, with respect to the purchase price to be paid by plaintiff for said stock, and the said purchase price is incapable of ascertainment, as hereinafter in this paragraph specifically found. Paragraph 6 of said Memorandum, stating that

" 'In no event, however, is the purchase price to be reduced below Two Million Four Hundred Thousand Dollars ($2,400,000), provided that there is no material disallowance by the Public Utilities Commission of the State of California with respect to plant account as set forth in the accounts of Park Water Company as at June 20, 1953.', was and is incomplete, indefinite and uncertain, in that the application and

effect of the proviso or factor set forth and contained in said paragraph by the words 'provided that there is no material disallowance by the Public Utilities Commission of the State of California with respect to plant account as set forth in the accounts of Park Water Company as at June 30, 1953,' were and are indefinite, uncertain, inchoate and unascertainable and never were made definite or certain, either by said Memorandum or by any agreement between or expressed intent or meeting of the minds of the parties to said Memorandum, or otherwise. Upon all of the evidence, oral and documentary, the Court finds that there was no agreement or understanding or meeting of the minds of the parties, either expressly or by implication, by word or conduct, or otherwise, as to how said proviso or factor was to be used or applied or given effect, whether as a basis for a reduction in the purchase price of said stock, or as a proviso affording plaintiff an opportunity to withdraw from the transaction, or as a cross-reference to the warranty provision in Paragraph 9 of said Memorandum, or otherwise; nor was there even any agreement or understanding or meeting of the minds of the parties as to the formula to be applied if said proviso or factor was to be employed as a basis for any reduction in the purchase price of said stock. On the contrary, the Court finds that the parties agreed only that any material disallowance would be substantial and important and that they agreed to and did leave the effect or application of said proviso or factor and the determination of any formula to be employed pursuant to said proviso or factor, to be agreed upon in future negotiations between the parties. No agreement or understanding as to the effect or use or application of said proviso or factor or as to any determination of any formula to be employed pursuant to said proviso or factor ever was reached by the parties, so that there was never any meeting of the minds of said parties or agreement as to the purchase price of said stock.

"15) Further, Paragraph 8 of said Memorandum, which reads in part, as follows:

"'Citizens and the Sellers agree to proceed forthwith and in good faith to formulate and execute a purchase agreement which shall . . . include other necessary provisions such as: the adequacy of the properties, franchises, certificates of convenience and necessity and other rights of Park Water Company necessary to enable it to carry on its business as a water public utility in the State of California and in its service territories; the nature and adequacy of the titles of Park

Water Company to its properties, contracts and other rights; the absence of material adverse changes; legal approval; necessary consents of stockholders; transactions pending the closing date other than in the ordinary course of business; and other pertinent matters.', was and is incomplete, inchoate, indefinite and uncertain. Said portion of said paragraph, said Memorandum and any purported agreement asserted by the plaintiff were incomplete, inchoate, indefinite and uncertain as to, and left to future negotiations between the parties, the nature, substance and extent of said 'necessary provisions' which were to be included in an ultimate formal agreement of purchase and sale. Upon all of the evidence, oral and documentary, the Court finds that there was no agreement, or understanding or meeting of the minds of the parties, either expressly or by implication, by word or conduct, or otherwise, with regard to the nature, substance or extent of said provisions. On the contrary, the Court finds that the parties agreed and intended only that said provisions would be left to be agreed upon in future negotiations between the parties. No agreement or understanding regarding the nature, substance or extent of such provisions ever was reached by the parties. However, the Court now finds that said 'necessary provisions' were not material and that the lack of agreement or understanding relating thereto, by itself, did not render said Memorandum incomplete, inchoate, indefinite or uncertain.

"16) The parties to said Memorandum did not, by Paragraph 9, of said Memorandum, or otherwise, warrant, agree or intend to agree that defendant shareholders warrant, nor did said defendants or any of them state to plaintiff, either expressly or by implication, by word or conduct, or otherwise, in substance or effect that they did or would warrant, that Park's plant account, or any part thereof, would not be disallowed by the Public Utilities Commission, whether in any proceedings on said rate application or otherwise. The parties to said Memorandum did not agree or intend or state, either expressly or by implication, by word or conduct, or otherwise, in substance or effect that said Paragraph 9 constituted such warranty, or that there was or would be any such warranty, or that there was or would be any connection or interrelation between the warranty provision of said Paragraph 9 and the proviso in Paragraph 6 relating to a material disallowance by the Public Utilities Commission of any of Park's plant account, or that the proviso of said Paragraph 6, with respect to a material disallowance by the Public Utilities

Commission, should be affected or modified or qualified in any way by the provisions of said Paragraph 9 of said Memorandum.''

Appellant contends (1) the intention of the parties with respect to price can be ascertained, and the court must so construe their agreement as to give effect to those intentions; (2) the trial court's finding that the contract was uncertain was based on an erroneous conception of the law; and (3) the trial court erred in excluding as immaterial the decision of the Public Utilities Commission on Park's rate application.

Appellant correctly states that the legal effect and meaning of a contract or other instrument is ordinarily a question of law; and that even when extrinsic evidence has been received, the legal effect and meaning of whichever version of the facts is adopted by the trial court is also a question of law. (See *Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300 [188 P.2d 470]; *Estate of Norris,* 78 Cal.App.2d 152, 159 [177 P.2d 299]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Donnellan,* 164 Cal. 14 [127 P. 166]; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 772 [128 P.2d 665].)

Appellant also correctly states that the outward manifestation or expression of assent is controlling (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]), and that what the language of a contract means is a ''matter of interpretation for the courts and not controlled in any sense by what either of the parties intended or thought its meaning to be. . . .'' (*Achen* v. *Pepsi-Cola Bottling Co.*, 105 Cal.App.2d 113 [233 P.2d 74].)

We are of the opinion, however, that the trial court did not restrict its determinations merely to questions of law. Definite findings upon questions of fact were made, which, under the circumstances of this case, are not reviewable by this court. The trial court made a specific finding that there was no meeting of the minds of the parties as to how the proviso or factor of material disallowance with respect to plant account would be applied. Inasmuch as the memorandum contained no expression of any agreement of the parties on a formula for giving effect to this proviso or factor, and this proviso or factor was to be a consideration affecting the price, the essential matter of price was left to be agreed upon in future negotiations. The result is that the memorandum must be construed as a mere statement of the intentions of the

parties or an agreement to agree in the future, and, as such, it is unenforceable at law or in equity.

 Appellant further argues that even if for any reason the memorandum is not capable of being interpreted as fixing the price with sufficient certainty, then an obligation to pay a reasonable price should be implied because of the provisions of Civil Code, section 1611, and subdivisions (1) and (4) of section 1729, which sections provide as follows:

"1611. *When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained,* or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth." (Emphasis added.)

"1729. (1) The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties.

. . . . . . . . . .

"(4) Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price. What is a reasonable price is a question of fact dependent on the circumstances of each particular case."

We are of the opinion that any such attempt to impose a price upon the parties would be unwarranted and would be clearly violative of the expressed intention of the parties. (See Civ. Code, §§ 1643, 1656 and 1641.) The proposed sale was of all the stock of a water company involving somewhat unique problems of valuation. There was no established market price; there was no prior course of dealings between the parties; and the record discloses no established practice in the industry by which the price could be fixed. The parties clearly attempted to provide an exclusive method by which price was to be ascertained. (See Civ. Code, §§ 1612, 1613.) The method established in the memorandum, however, is so vaguely expressed that the price is wholly unascertainable, with the result that the memorandum failed to impose legally binding obligations upon the parties. (Civ. Code, § 1598.)

The magnitude of the risk to the parties by the attempt to substitute a reasonable price for the method by which the parties intended that the price should be ascertained is apparent from the mere statement of the following facts: the original asking price was $3,000,000; the original offer to buy was $2,300,000; and the fair market value is alleged to

be $7,200,000 by plaintiff in paragraph VI of the second cause of action stated in its first amended and supplemental complaint.

Appellant's contention that the trial court erred in excluding as immaterial the decision of the Public Utilities Commission on Park's rate application is based upon the assumption that the warranty provisions contained in Paragraph 9 of the memorandum are to be considered in interpreting Paragraph 6 of said memorandum.

Probably this assumption by Rosenthal, and the insistent, unpleasant, and almost insulting manner of stating this position was a very real factor in the breakdown of the negotiations. One of many similar comments is set forth for illustration in an excerpt from a letter directed to Henry W. Wheeler, by Rosenthal under date of January 27, 1954, ''I cannot, of course, agree at all with your contention that the signed Memorandum of Agreement is neither clear nor precise; nor, as someone now seeks to characterize it, as lacking in effect. The Memorandum of Agreement is, after all, English. It can be read; it was read before it was signed; and because it is English, its meaning can be very clearly ascertained.''

The trial court, however, made a specific finding of fact that the parties did not agree or intend to state, either expressly or by implication, by word or conduct or otherwise ''that the proviso of said Paragraph 6, with respect to a material disallowance by the Public Utilities Commission, should be affected or modified or qualified in any way by the provisions of said Paragraph 9 of said Memorandum.'' (See Finding of Fact 16, *supra*.)

In view of the foregoing finding of fact, the trial judge would not have been assisted in interpreting Paragraph 6 of the Memorandum by considering any conclusion which the Public Utilities Commission might or could have reached concerning the accounting practices of Park Water Company, and appellant was not prejudiced in any way by the exclusion of this evidence.

The judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied January 24, 1958, and appellant's petition for a hearing by the Supreme Court was denied February 26, 1958.

---

*Assigned by Chairman of Judicial Council.