[No. B035652. Second Dist., Div. Seven. July 13, 1989.]

JOHN BECK, Plaintiff and Appellant, v.
AMERICAN HEALTH GROUP INTERNATIONAL, INC., et al.,
Defendants and Respondents.

## COUNSEL

Potter & Reed and Randolph A. Rogers for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter, Bruce E. Weiner, Greines, Martin, Stein & Richland, Alan G. Martin and Pamela Victorine for Defe∷dants and Respondents.

## OPINION

LILLIE, P. J.—Plaintiff, John Beck, M.D., appeals from judgment dismissing his first amended complaint entered after the trial court sustained the demurrer of defendants, American Health Group International, Inc. (Health Group), and Palmdale Health Group, Inc., doing business as Palmdale Hospital Medical Center (Hospital), without leave to amend.

### FACTS

Plaintiff sued defendants for damages for breach of contract, bad faith denial of the existence of a contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent interference with an economic relationship. Each of these theories of recovery was based on an alleged contract whereby plaintiff, a psychiatrist, was to act as the medical director for mental health services at defendant Hospital.

The first amended complaint contained five causes of action. The first cause of action (breach of contract) alleged: Defendant Health Group is the "parent or an affiliate" of defendant Hospital with a financial interest in the profitability of the Hospital. At all times alleged each defendant was an agent of the other and each acted within the scope of such agency in

performing the acts alleged. On May 21, 1987, plaintiff and the Hospital entered into a written contract drafted by the Hospital.[1] At all times plaintiff stood ready, willing and able to perform in accordance with the contract. On July 22, 1987, the Hospital, by letter to plaintiff from the Health Group, gave notice that it would not perform the contract and repudiated it. As a proximate result of the Hospital's breach of contract plaintiff sustained general and special damages.

Each of the ensuing causes of action incorporated the allegations of the first cause of action. The second cause of action (denial of existence of contract in bad faith and without probable cause) and the third cause of action (breach of implied covenant of good faith and fair dealing) were directed against both defendants, while the fourth cause of action (intentional interference with economic relationship) and the fifth cause of action (negligent interference with economic relationship) were directed against the Health Group.

---

[1] At this point the first cause of action incorporated by reference a copy of the alleged contract which was attached to the pleading. The attached writing was in the form of a letter from the Hospital to plaintiff and read:

"May 21, 1987

"John Beck, M.D.
1220 East Avenue S, Suite J
Palmdale, CA 93550

"Dear John:

"It is a pleasure to draft the outline of our future agreement after these many months of discussion for a general psychiatric unit at Palmdale Hospital Medical Center. The agreement, to be prepared by American Health Group International, is for you to be the Medical Director for Mental Health Services in the corporation. This will require you to prepare Clinical Psychologists for a hospital practice at Palmdale Hospital Medical Center. You will help formulate Mental Health policies and participate on the Mental Health Committee.

"During the term of this five-year contract, you must maintain active admitting privileges and you will be allowed to admit your psychiatric patients along with other Psychiatrists and Clinical Psychologists in this open adult psychiatric unit. The corporate contract will pay you 10% of the room and board charges of all general psychiatric patients. Compensation to be 10% of Gross Rev. for room and board for each month of the agreement. The contract will have a 60-day cancellation clause for non-performance.

"If this is a general understanding of the agreement, I ask that you sign a copy of this letter, so that I might forward it to Corporate Counsel for the drafting of a contract. When we have a draft, we will discuss it, and hopefully shall have a completed contract and operating unit in the very near future.

"Sincerely,

/s/
"Reid Anderson /s/
"Executive Director "John Beck, M.D."

The underscored portions of the letter denote handwritten changes and additions made and initialed by plaintiff and the executive director of the Hospital.

Defendants demurred generally to each cause of action on the following grounds: (1) there was no binding, enforceable contract as shown by the language of the writing attached to and incorporated into the first amended complaint; and (2) if such writing constituted a contract, the contract is illegal in that it allows plaintiff to admit his psychiatric patients to the Hospital and fixes his compensation at 10 percent of the room and board charges of all general psychiatric patients at the Hospital, in violation of Business and Professions Code section 650.

The trial court sustained the demurrer without leave to amend as to all causes of action on the grounds there was no contract or contractual relationship as a matter of law and "any prospective economic benefit to plaintiff is too speculative to support the plaintiff's claims."

Judgment was entered dismissing the first amended complaint. This appeal followed.

DISCUSSION

I

Plaintiff contends the trial court erred in construing the writing upon demurrer because judicial interpretation of a written instrument is proper only after the parties have had the opportunity to present extrinsic evidence bearing upon the intent of the parties and the meaning of the writing.

In support of this contention plaintiff cites *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], wherein the Supreme Court stated: "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] [¶] A rule that would limit the determination of the meaning of a written instrument to its four corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained. . . . [¶] . . . [T]he meaning of a writing '. . . can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.

[Citations omitted.]' [Citations.] . . . . [¶] Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.]" (69 Cal.2d at pp. 37-40, fn. omitted.)

As plaintiff notes, these principles have been applied to set aside the trial court's sustaining of a demurrer based upon the court's interpretation of a written instrument attached to and incorporated into the complaint. (*Southern Pacific Land Co.* v. *Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 815-817 [233 Cal.Rptr. 794]; *Shaw* v. *Metro-Goldwyn-Mayer, Inc.* (1974) 37 Cal.App.3d 587, 598-599 [113 Cal.Rptr. 617].) However, as the court acknowledged in the *Southern Pacific Land* case, this result obtains only where the plaintiff alleges the meaning which he ascribes to an ambiguous writing attached to and incorporated into the complaint. (188 Cal.App.3d at p. 817.) " '. . . It is perfectly proper to set out a contract *in haec verba*. But in such case, if the contract is uncertain, the pleader must put some definite construction on it by averment.' " (*Connell* v. *Zaid* (1969) 268 Cal.App.2d 788, 795 [74 Cal.Rptr. 371], quoting *Durkee* v. *Cota* (1887) 74 Cal. 313, 315 [16 P. 5].)

Plaintiff's first amended complaint does not allege his interpretation of the attached and incorporated writing, save the conclusional allegation that it is the contract of the parties. ■ Accordingly, the following principles govern the trial court's review of the writing in ruling on the demurrer: " 'Ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms alleged according to their legal effect. . . . But if the instrument is ambiguous, the pleader must allege the meaning he ascribes to it. [Citations.]' [Citation.] Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach." (*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749-750 [200 Cal.Rptr. 605], fn. omitted.) This rule applicable on demurrer "is simply a variation on the well-recognized theme that ' "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." ' [Citations.]" (*California Assn. of Highway Patrolmen* v. *Department of Personnel Admin.* (1986) 185 Cal.App.3d 352, 361 [229 Cal.Rptr. 729].)

■ The first amended complaint merely incorporated a copy of the attached writing by reference, leaving it to speak for itself. Plaintiff did not allege that the writing is ambiguous and is subject to the interpretation that it is a contract. Accordingly, we construe its language in light of the following principles.[2]

■ "Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole." (*Smissaert* v. *Chiodo* (1958) 163 Cal.App.2d 827, 830 [330 P.2d 98].) ■ "Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement. 'A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.' [Citation.]" (*Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 59 [248 Cal.Rptr. 217].) Thus, where it is part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon or it does not become a binding or completed contract. (*Duran* v. *Duran* (1983) 150 Cal.App.3d 176, 180 [197 Cal.Rptr. 497]; *Frankenheimer* v. *Frankenheimer* (1964) 231 Cal.App.2d 101, 108-109 [41 Cal.Rptr. 636]; *Forgeron Inc.* v. *Hansen* (1957) 149 Cal.App.2d 352, 360 [308 P.2d 406]; *Store Properties, Inc.* v. *Neal* (1945) 72 Cal.App.2d 112, 116 [164 P.2d 38].) ■ The words of a written instrument are generally to be understood in their ordinary and popular sense. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 931 [218 Cal.Rptr. 839].) The objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation. (*Market Ins. Corp.* v. *Integrity Ins. Co.* (1987) 188 Cal.App.3d 1095, 1098 [233 Cal.Rptr. 751].) "[T]he outward manifestation or expression of assent is controlling [citation], and . . . what the language of an [instrument] means is 'a matter of interpretation for the courts and not controlled in any sense by what either of the parties intended or thought its meaning to be. . . .' [Citation.]" (*Citizens Utilities Co.* v. *Wheeler* (1957) 156 Cal.App.2d 423, 432 [319 P.2d 763].)

■ The letter under consideration begins: "It is a pleasure to draft the *outline of our future agreement . . . .*" (Italics added.) After outlining the

---

[2] Because the trial court's interpretation of the writing does not turn upon the credibility of extrinsic evidence we are not bound by the trial court's construction but must make our own independent interpretation. (*Gerdlung* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279].)

terms of the proposed agreement the writer of the letter asks plaintiff to sign it "if this is a general understanding of the agreement," in order that the Hospital may "forward it to Corporate Counsel *for the drafting of a contract.*" (Italics added.) The letter concludes: "When we have a draft, we will discuss it, and *hopefully shall have a completed contract* and operating unit in the very near future." (Italics added.) Taken in their ordinary sense, the words of the letter manifest an intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel. Assignment of the drafting to an attorney evidences an expectation that the terms set forth in the letter were subject to his approval.[3] Even after counsel drafted a contract the letter contemplated further negotiations by its statement that "when we have a draft, we will discuss it." By signing the letter plaintiff assented to its terms, i.e., no binding agreement would result until a formal contract was drafted by counsel. That plaintiff may have intended or believed a binding contract came into existence upon his signing the letter is immaterial in the face of its language which plainly indicated otherwise.

We conclude that the letter did not constitute a binding contract, but was merely "an agreement to agree" which cannot be made the basis of a cause of action. (*Autry* v. *Republic Productions, Inc.* (1947) 30 Cal.2d 144, 151 [180 P.2d 888].)

While plaintiff does not directly challenge the sustaining of the demurrer to his second and third causes of action (bad faith denial of the existence of a contract and breach of the implied covenant of good faith and fair dealing, respectively), such ruling was proper inasmuch as the validity of those causes of action is dependent upon the formation of a contractual relationship. (*Kruse* v. *Bank of America, supra,* 202 Cal.App.3d 38, 57; *Hess* v. *Transamerica Occidental Life Ins. Co.* (1987) 190 Cal.App.3d 941, 944-945 [235 Cal.Rptr. 715].)

II

Plaintiff contends the trial court improperly sustained the demurrer without leave to amend. ■ It is an abuse of discretion to sustain a demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638].) Plaintiff conceivably could amend his first cause of action to allege that the letter is

---

[3] A letter dated July 22, 1987, to plaintiff from the general counsel of the Health Group (attached to and incorporated into the first amended complaint) states that counsel reviewed the letter to plaintiff from the Hospital and concluded that its terms were unlawful.

ambiguous and is reasonably subject to the interpretation it was intended by the parties to constitute a binding contract. (See *Connell* v. *Zaid, supra,* 268 Cal.App.2d 788, 795.) The addition of such an allegation would bring into play the rule that a trial court on demurrer may not interpret a writing on the assumption that the plain meaning of its terms prevails. (*Southern Pacific Land Co.* v. *Westlake Farms, Inc., supra,* 188 Cal.App.3d 807, 817.) ■ However, if such an amendment were made a cause of action for breach of contract still would not be stated because the contract embodied in the letter is illegal and hence void.

Business and Professions Code section 650[4] makes it unlawful for one licensed in the healing arts to receive or accept "any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise," as compensation or inducement for the referral of patients. The statute was intended to prevent "the referring person [from being tempted] to suggest or prescribe extra, or more expensive services by the person to whom the patient is referred because the referring person's income is a function of the business he generates by referral." (53 Ops.Cal.Atty.Gen. 117, 118 (1970).) The evil to be proscribed by section 650 " '. . . is not just the payment for the referral, but also any relationship where the referral may be induced by considerations other than the best interests of the patient . . . .' " (63 Ops.Cal.Atty.Gen. 89, 92 (1980), fn. omitted.) "Certainly a sick patient deserves to be free of any reasonable suspicion that his doctor's judgment is influenced by a profit motive." (*Magan Medical Clinic* v. *Cal. State Bd. of Medical Examiners* (1967) 249 Cal.App.2d 124, 132 [57 Cal.Rptr. 256].)

The alleged contract provides that plaintiff shall act as medical director of mental health at the Hospital, requires that he maintain active admitting

---

[4]Business and Professions Code section 650 provides in pertinent part: ". . . [T]he offer, delivery, receipt or acceptance, by any person licensed under this division [Division 2, Healing Arts] of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest or coownership in or with any person to whom such patients, clients or customers are referred is unlawful. [¶] . . . [I]t shall not be unlawful for any person licensed under this division to refer a person to any laboratory, pharmacy, clinic, or health care facility solely because such licensee has a proprietary interest or coownership in such laboratory, pharmacy, clinic, or health care facility; but such referral shall be unlawful if the prosecutor proves that there was no valid medical need for such referral. . . . [¶] 'Health care facility' means a hospital, nursing home, medical care facility, or private mental institution licensed by the State Department of Health Services. [¶] A violation of this section is a public offense and is punishable upon a first conviction by imprisonment in the county jail for not more than one year, or by imprisonment in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both such imprisonment and fine. A second or subsequent conviction is punishable by imprisonment in the state prison."

privileges there, permits him to admit his psychiatric patients to the Hospital, and fixes his compensation at 10 percent of the room and board charges of all of the Hospital's psychiatric patients for each month of the agreement. This formula links plaintiff's compensation to the number of psychiatric inpatients at the Hospital, thereby providing an inducement for plaintiff to refer (admit) his patients to the Hospital. Accordingly, performance of the contract would violate Business and Profession's Code section 650. Plaintiff argues there is no violation because the contract contemplates payment for medical services, not patient referrals. (See *Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 390 [44 Cal.Rptr. 572].) The contention is without merit. In 1971 section 650 was amended to delete the word "unearned" before the words "rebate" and "consideration" in the first paragraph of the section. (Stats. 1971, ch. 1568, § 1; and see fn. 4, *ante*.) A material change in the language of a statute shows an intention on the part of the Legislature to change the meaning of the statute. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1007 [197 Cal.Rptr. 250].) Accordingly, for purposes of applicability of section 650, it is immaterial that the referring physician earns compensation by performing services if that compensation is subject to increase by his referral of patients.

Because performance of the purported contract would violate Business and Professions Code section 650, the contract is void and unenforceable.[5] (*Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 987 [199 Cal.Rptr. 859].)

---

[5]That portion of the concurring opinion which disagrees with our conclusion that the agreement is unenforceable in its entirety, points out that inasmuch as the illegal compensation arises only when plaintiff admits one of his own patients to defendant Hospital, such illegal consideration may be severed from the agreement by deleting the provision allowing plaintiff to admit his own patients. Such reasoning is inapplicable in this appeal in which the sole question is the propriety of the sustaining of a general demurrer to the complaint. A demurrer has the primary function of testing the legal sufficiency of the pleading to which it is addressed and raises only questions of law. (*Seidner* v. *1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 902 [166 Cal.Rptr. 803].) "The only issue involved in a demurrer hearing is whether the complaint as it stands unconnected with extraneous matters, states a cause of action [citation]." (*SKF Farms* v. *Superior Court* (1984) 153 Cal.App.3d 902, 905 [200 Cal.Rptr. 497].) Because the illegality of the agreement, as pleaded, appears on the face of the complaint, the demurrer is properly sustained.

Contrary to the view expressed in the concurring opinion, the complaint cannot be amended to allege severability thereby rendering the agreement valid and enforceable in part. While it may be possible to segregate the illegal portion of plaintiff's compensation (i.e., the portion attributable to room and board charges of plaintiff's psychiatric patients admitted by him to defendant Hospital) from the untainted portion, the evil proscribed by section 650, Business and Professions Code is not merely payment for the referral, but also " '. . . any relationship where the referral may be induced by considerations other than the best interests of the patient . . . .' " (63 Ops.Cal.Atty.Gen. 89, 92 (1980).) Accordingly, the alleged agreement becomes legal and enforceable only if the provision permitting plaintiff to admit his psychiatric patients to defendant Hospital is stricken or if plaintiff's compensation is not tied to the monthly revenue from room and board charges of all general psychiatric patients. Courts may not revise an agreement or create a contract not made by the parties under the guise of

## III

Plaintiff contends the trial court recognized that plaintiff's causes of action for interference with economic relations are not dependent upon the existence of an enforceable contract, as shown by the second ground for the court's sustaining of the demurrer, viz., "any prospective economic benefit to plaintiff is too speculative to support the plaintiff's claims." Plaintiff then argues the court erred in sustaining the demurrer because damages flowing from commission of the tort can be measured by reference to the terms of the alleged contract fixing plaintiff's compensation.

It is unnecessary to discuss this contention. ▆ It is the validity of the court's action in sustaining a demurrer which is reviewable and not the court's statement of reasons for its action. (*Franchise Tax Board* v. *Firestone Tire & Rubber Co.* (1978) 87 Cal.App.3d 878, 883 [151 Cal.Rptr. 460].) Accordingly, a judgment based on an order sustaining a general demurrer must be affirmed if any one of the grounds of demurrer is well taken. (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].)

Defendant demurred to the causes of action for interference with an economic relationship on the ground, among others, that they were based upon a contract which never came into existence. It is true that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage and although the elements of the two actions are similar, the existence of a legally binding agreement is not a sine qua non to the maintenance of an action based upon the more inclusive wrong. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].) However, while plaintiff labeled his fourth and fifth causes of action "Intentional Interference With Economic Relationship" and "Negligent Interference With Economic Relationship," respectively, the allegations of those causes of action show they actually were based on interference with contract or inducing breach of contract. Thus, it was alleged that the Health Group knew of the contractual relationship between plaintiff and the Hospital and falsely represented to the Hospital that the contract was illegal with the intent to induce the Hospital to breach its contract with plaintiff. Neither cause of action set forth facts showing an economic relationship between plaintiff and the Hospital other than their alleged contractual relationship.

construction. (*Diaz* v. *United California Bank* (1977) 71 Cal.App.3d 161, 172 [139 Cal.Rptr. 314].) In construing a contract the office of the court is simply to ascertain and declare what is contained therein, in terms or in substance, and not to insert what has been omitted or to omit what has been inserted. (Code Civ. Proc., § 1858; *Jensen* v. *Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 790 [345 P.2d 1].)

Inasmuch as the existence of a valid contract is an element of the tort of inducing breach of contract or interference with contract (*Contemporary Investments, Inc.* v. *Safeco Title Ins. Co.* (1983) 145 Cal.App.3d 999, 1002 [193 Cal.Rptr. 822]; *Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 995 [135 Cal.Rptr. 720]), the demurrer to the fourth and fifth causes of action was properly sustained.

DISPOSITION

The judgment is affirmed.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I concur in the judgment. I write separately because, although I agree the compensation arrangement between Beck and American Health Group, Inc., violates Business and Professions Code section 650, I respectfully disagree with the majority's conclusion the agreement, if there were an agreement, is unenforceable in toto.

The majority apparently assumes the agreement is void in its entirety because it unlawfully permits Beck to receive an indirect referral fee for each of his own patients he refers to the health care facility. This assumption is incorrect.

"[I]f the court can, consistent with the intent of the parties, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side," the contract will be deemed severable and the illegal portion severed from the contract. (*Keene* v. *Harling* (1964) 61 Cal.2d 318, 321 [38 Cal.Rptr. 513, 392 P.2d 273]; accord *Ryan* v. *Mike-Ron Corp.* (1968) 259 Cal.App.2d 91, 95-96 [66 Cal.Rptr. 224]; *Lawn* v. *Camino Heights, Inc.* (1971) 15 Cal.App.3d 973, 980 [93 Cal.Rptr. 621]; see *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 672 [134 Cal.Rptr. 815, 557 P.2d 106].) It is only where the court cannot distinguish between the lawful and unlawful portions of the agreement, and the illegality taints the entire agreement, that the entire agreement will be illegal and unenforceable. (*Keene* v. *Harling, supra,* 61 Cal.2d at p. 321; *Weber* v. *Tonini* (1957) 151 Cal.App.2d 168, 171 [311 P.2d 132].)

Here, the illegal portions of the compensation agreement are clearly severable. Beck's compensation, although described in terms of a percentage of the revenues for room and board, is essentially calculated on a per capita basis. Thus, his compensation varies with the addition or subtraction of patients.

The illegal compensation arises when Beck admits one of his own patients to the health care facility for treatment. At that time, Beck would receive an indirect referral fee calculated as a percentage of his patient's fees for room and board. If the contractual provision permitting Beck to admit his own patients to the health care facility is severed, so too is the illegality. The remainder of the agreement, whereby Beck provides services to all other patients in exchange for a per capita fee, would be free of any illegal taint and therefore enforceable.

The majority argues the issue of severability is not within the scope of review because it involves matters extraneous to the complaint. In contrast, the majority contends the issue of illegality is properly before it because the illegality appears on the face of the complaint. So too does the severability of the fee arrangement. As I explained above, the terms of the contract, as they were presented in the complaint, demonstrate the illegal portion of the contract is severable from other, valid consideration.

However, even assuming the majority's argument is correct, the action would not be barred merely because additional allegations are required to state a viable claim. If there is a reasonable possibility a defect in the complaint can be cured by amendment, the plaintiff should be given the opportunity to amend. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]; *Call* v. *Kezirian* (1982) 135 Cal.App.3d 189, 195 [185 Cal.Rptr. 103].)

The majority apparently concedes Beck could amend his complaint to allege severability. Therefore, had there otherwise been an agreement between Beck and the defendant Health Group, at the least Beck should be permitted to amend his complaint to allege severability.

Appellant's petition for review by the Supreme Court was denied October 11, 1989.