OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |
|---|---|
| OPINION | : |
|  | : |  No. 90-304 |
| of | : |
|  | : |  October 25, 1990 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
|  | : |
| CLAYTON P. ROCHE | : |
| Deputy Attorney General | : |
|  | : |

---

THE HONORABLE BILL FILANTE, M.D., MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Where a group of radiologists contracts with physicians to provide imaging services for the patients of the physicians, and the agreement provides that (1) the group will charge each patient a fee for the services, (2) the fees collected will be transmitted to the physicians, (3) the physicians will pay stipulated amounts to the group for the services, and (4) the total amounts paid by the physicians will be independent of but increase proportionately less than the total fees collected from the patients, would performance of the agreement violate Business and Professions Code section 650?

CONCLUSION

Where a group of radiologists contracts with physicians to provide imaging services for the patients of the physicians, and the agreement provides that (1) the group will charge each patient a fee for the services, (2) the fees collected will be transmitted to the physicians, (3) the physicians will pay stipulated amounts to the group for the services, and (4) the total amounts paid by the physicians will be independent of but increase proportionately less than the total fees collected from the patients, performance of the agreement would violate Business and Professions Code section 650.

ANALYSIS

A group of radiologists proposes to furnish imaging services (such as chest x-rays and ultrasound examinations) for the patients of physicians in a community. The group will contract with the physicians to provide the technical component of these services,[1] charge the patients for the

---

[1]The professional services rendered by the radiologists would be treated separately and are not of concern in this opinion. The technical component would be limited to the use of the equipment to produce the images and related administrative costs.

services, and transmit the fees to the physicians. The physicians in turn will pay the group for these services, but such amounts will increase proportionately less than the fees collected from the patients. As more patients of a physician are referred to the group, the physician will receive a greater proportion in fees than the amount he or she must pay to the group.[2]

The question presented is whether performance of the proposed agreement would violate section 650 of the Business and Professions Code (hereinafter "section 650"). That section as relevant to our inquiry provides:

". . . the offer, delivery, receipt or acceptance, by any person licensed under this division of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person . . . is unlawful. . . ."

Accordingly, section 650 has the following elements:

(1) An offer, delivery, receipt or acceptance

(2) by any person licensed under this division [the healing arts provisions]

(3) of consideration to any person

(4) as compensation or inducement for

(5) referral of patients, clients or customers.

In the recent case, *Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1564, the court summarized the elements and purposes of section 650 as follows:

"Business and Professions Code section 650 makes it unlawful for one licensed in the healing arts to receive or accept `any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise,' as compensation or inducement for the referral of patients. The statute was intended to prevent `the referring person [from being tempted] to suggest or prescribe extra, or more expensive services by the person to whom the patient is referred because the referring person's income is a function of the business he generates by referral.' (53 Ops.Cal.Atty.Gen. 117, 118 (1970).) The evil to be proscribed by section 650 `". . . is not just the payment for the referral, but also any relationship where the referral may be induced by considerations other than the best interests of the patient . . . ."' (63 Ops.Cal.Atty.Gen. 89, 92 (1980); fn. omitted.) `Certainly a sick patient deserves to be free of any reasonable suspicion that his doctor's judgment is influenced by a profit motive.' (*Magan Medical Clinic* v. *Cal State Bd. of Medical Examiners* (1967) 249 Cal.App.2d 124, 132.)" (Fn. omitted.)

---

[2]Each physician's payment would be based upon the group's overhead expenses. These would not increase in direct proportion to the fees collected from the patients. Hence a physician would generate greater personal income both quantitatively and proportionately with each referral to the group.

We return to the five elements of the offense proscribed by section 650 to determine if performance of the proposed agreement would include each of them. Here the radiologists would be "any person licensed under this division" making an "offer" and "delivery" of "consideration . . . in the form of money . . . as compensation or inducement for referring patients" to them. They would pay to the physicians the fees charged the patients for the technical imaging services furnished by the radiologists. The physician would not "earn" these fees by personally performing the services. While it is true that the physicians would pay the radiologists specified amounts for rendering these services, the specified amounts would be on a sliding scale which would increase at a lower rate with each referral. Not only would the physicians obtain more income with each referral based upon the fees collected from the patients, they would receive a greater proportionate share due to their lower per-patient costs paid to the radiologists.

The physicians, of course, are also "any person licensed under this division," and performance of the agreement would result in their "receipt or acceptance . . . of consideration . . . in the form of money . . . as compensation or inducement for referring patients" to the radiologists. The more referrals made, the greater will be the consideration paid to the physicians.

One of the main purposes of section 650 is to assure that a health care professional is not tempted to make referrals for medical or allied services "'<u>because the referring person's income is a function of the business he generates by referral</u>.'" (*Beck* v. *American Health Group Internat., Inc., supra*, 213 Cal.App.3d 1555, 1564 (emphasis added); see also *Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 390; 68 Ops.Cal.Atty.Gen. 28, 32-34 (1985); 53 Ops.Cal.Atty.Gen. 117, 118 (1970); 16 Ops.Cal.Atty.Gen. 20, 22-24 (1950).) Under the proposed agreements, "a sick patient [would not] be free of any reasonable suspicion that his doctor's judgment is influenced by a profit motive." (*Magan Medical Clinic* v. *Cal.State Bd. of Medical Examiners* (1967) 249 Cal.App.2d 124, 132.)

With each referral, the referring physician will receive an economic benefit that is not based solely upon the imaging services rendered the patient. An increment of the consideration will be tied exclusively to the referral itself in that the physician will receive a proportionately greater share of the payments by increasing the number of referrals. As was stated with respect to a contract in *Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 987, "no matter how subtly disguised, or ingeniously interpreted, the subject contract by the terms, and the performance required . . . thereunder, violates section 650 of the Business and Professions Code. . . ."

Accordingly, we conclude that where a group of radiologists contracts with physicians to provide imaging services for the patients of the physicians, and the agreement provides that (1) the group will charge each patient a fee for the services, (2) the fees collected will be transmitted to the physicians, (3) the physicians will pay stipulated amounts to the group for the services, and (4) the total amounts paid by the physicians will be independent of but increase proportionately less than the total fees collected from the patients, performance of the agreement would violate section 650 of the Business and Professions Code.

\* \* \* \*