TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-807 |
| of | : | |
| | : | June 30, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE BOB EPPLE, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a podiatry referral service for profit direct callers on the following basis:  (1) to a service subscriber who pays $500 monthly for a nonexclusive listing according to geographic proximity; (2) to a service subscriber who pays $750 monthly for a semi-exclusive listing within a five-mile radius; and (3) to a service subscriber who pays $1000 monthly for an exclusive listing within a five-mile radius, where the caller may, during the call, request and select an alternative referral?

CONCLUSION

A podiatry referral service for profit may not direct callers on the following basis: (1) to a service subscriber who pays $500 monthly for a nonexclusive listing according to geographic proximity; (2) to a service subscriber who pays $750 monthly for a semi-exclusive listing within a five-mile radius; and (3) to a service subscriber who pays $1000 monthly for an exclusive listing within a five-mile radius, where the caller may, during the call, request and select an alternative referral.

ANALYSIS

We are presented with a proposed marketing program for podiatrists involving the referral of patients located within a particular geographical area.  Telephone callers would be referred to a podiatrist who contracts with the referral service and who pays a prescribed rate

1.                                                                93-807

defining the exclusivity of such referrals within the designated geographical area.[1]   We conclude that the program would violate the provisions of Business and Professions Code section 650.[2]

Section 650 provides in pertinent part:

". . . [T]he offer, delivery, receipt, or acceptance by any person licensed under this division [§§ 500-4998.7] of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest or coownership in or with any person to whom these patients, clients or customers are referred is unlawful."

The statutes regulating the practice of podiatric medicine (§§ 2460-2499.8) are found in "this division" for purposes of section 650's prohibition.[3]

As noted in 70 Ops.Cal.Atty.Gen. 65, 67 (1987), the Legislature has enacted section 650 to protect the public from excessive health care costs (*Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 986), referrals based upon considerations other than the best interests of the patients (*Magan Medical Clinic* v. *Cal. State Bd. of Medical Examiners* (1967) 249 Cal.App.2d 124, 132; 68 Ops.Cal.Atty.Gen. 28, 31 (1985)), deceit and fraud (63 Ops.Cal.Atty.Gen. 89, 91 (1980)), and payment to a licensee where professional services have not been rendered (65 Ops.Cal.Atty.Gen. 252, 253 (1982)).

In *Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1564, the court stated:

". . . . The evil to be proscribed by section 650 `". . . is not just the payment for the referral, but also any relationship where the referral may be induced by considerations other than the best interests of the patient . . . .'"   (63 Ops.Cal.Atty.Gen. 89, 92 (1980), fn. omitted.)"

---

[1]The proposed recorded message would represent to the caller that a referral will be made "to a doctor nearest you."  It is proposed, however, that the referral may be made to the nearest doctor who has paid for an exclusive referral.  It is unlawful for a licensed professional to disseminate or cause to be disseminated any form of public communication containing a false, fraudulent, misleading, or deceptive statement or claim, for the purpose of or likely to induce, directly or indirectly, the rendering of professional services in connection with such license, or to use a medical or similar directory listing which includes such a statement or claim.  (Bus. & Prof. Code, § 651, subds. (a), (e).)

[2]All references hereafter to the Business and Professions Code are by section number only.

[3]Health and Safety Code section 445 states in part: "No person, firm, partnership, association or corporation, or agent or employee thereof, shall for profit refer or recommend a person to a physician, hospital, health-related facility, or dispensary for any form of medical care or treatment of any ailment or physical condition."  In view of the conclusion herein, we need not consider whether the term "physician" includes a practitioner of podiatric medicine within the meaning of that section. (Cf. 57 Ops.Cal.Atty.Gen. 79 (1974).)

We have examined the language of section 650 in a variety of contexts, finding a violation in some instances, while not in others. (See 76 Ops.Cal.Atty.Gen. 204, 206 (1993).)  Here, we are presented with a proposed referral plan strikingly similar to a plan for dentists that was analyzed in 65 Ops.Cal.Atty.Gen. 252, *supra*.  We stated in the latter opinion:

"The referral plan about which inquiry is made fits squarely within the section's broad prohibition.  The verb `refer' is defined as `to send or direct for treatment, aid, information, decision' (Webster's Third New Internat. Dict. (1971 ed.) at p. 1907, def. (2a)) and a `referral' as `the process of directing . . . a patient . . . to an appropriate specialist or agency for definitive treatment' (*id.*, at p. 1908, def. (1b)).  The phrase `referral of patients' used in section 650 may thus be thought of as the process whereby a third party independent entity who initially has contact with a person in need of health care first *selects* a professional to render the same and then in turn places the prospective patient in contact with that professional for the receipt of treatment.  In other words it is the selection of a dentist to provide professional services for a patient by someone other than the patient or dentist (or their employees or agents on their behalf) that constitutes the `referring of patients' under section 650.  In our situation, the individual dentists who participate in the referral service plan pay a fee to just such a third party independent entity to secure new patients by being selected by it to render professional services to persons who have contacted it, and not the dentist, initially.  As we have seen section 650 was designed to ensure that that selection and subsequent reference would not be tainted by the receipt of a fee and that the patient would not pay more for the ultimate services he receives because of it. . . .  Inasmuch as in the process described herein consideration *is paid* to obtain the advantage of being selected by the referral service to be the treating professional, a violation of section 650 occurs.  We therefore conclude that the operation of a dental referral service described herein runs afoul of section 650's prohibition on payment for referrals, and is therefore prohibited by that section." (*Id.*, at pp. 254-255.)

We reject the suggestion that the proposed program would not involve "a third party independent entity" as in our prior opinion because telephonic access would be to a computerized directory.  The subscriber fees would be accepted by persons in the referral agency who would determine which names would be included in the directory.  This is so even though the referral service is denominated a "television advertising supported computerized/audio location service," and the determination as to inclusion or exclusion of names is denominated as "management of the computer system."

We find no legal significance in the fact that the caller would be able to request an alternative referral.  While the caller could thereby "select" a podiatrist from among two, or even perhaps more than two, who have paid the  prescribed rate for the privilege, it is still the referral agency that would make the initial selection and referral, rendering the language of section 650 applicable.  We believe that even if the caller could request and receive the referral agency's entire list of professionals willing to pay its price, the referral would nevertheless be predicated upon considerations other than the best interests of the prospective patient.  The number of referrals in the proposed program would correlate with nothing other than the amount of money paid by the podiatrist to the referral agency which neither has nor expresses any interest whatsoever in the health care of the patient.

The proposed referral plan for podiatrists comes squarely under our 1982 dental referral opinion.  The only significant event that has occurred during the past 12 years has been the Legislature's enactment of express authorization for dental referral services (§ 650.2) and

3.                                                                              93-807

chiropractic referral services (§ 650.3) subject to strict limitations. Such legislative authorization and the lack thereof for podiatrist referral services support the conclusion that a referral plan for podiatrists such as proposed here would violate the terms of section 650.[4]

As stated in section 650, the proposed plan would involve the "delivery" by a podiatrist "licensed under this division" of "consideration . . . in the form of money . . . as compensation or inducement for referring patients . . . to any person," the podiatrist. It is concluded that a podiatry referral service may not direct callers to a professional based upon a fee paid by the professional for such referrals.

* * * * *

---

[4]In view of the conclusion herein, we have no occasion to consider any concomitant provisions of federal law. (Cf. 42 U.S.C. § 1320a-7b(b).)